W. Earl DUNCAN, James R. Duncan, Hoyt P. Piver, Daris H. Piver, Administratrix of the Estate of Avery A. Piver, Deceased, Appellants,

v.

Glenn PENINGER, Appellee.

No. 79–1609.

United States Court of Appeals, Fourth Circuit.

Argued May 9, 1980.

Decided June 24, 1980.

Ralph G. Jorgensen, Tabor City, N. C., for appellants.

Wayne C. Alexander, Asst. U. S. Atty., Charlotte, N. C. (Harold M. Edwards, U. S. Atty., Charlotte, N. C., Pamela G. Steele, Washington, D. C., Small Business Administration, on brief), for appellee.

Before WINTER, WIDENER and MURNAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

Posed by this case is the question of whether a sufficient claim was asserted where a Small Business Administration official was claimed to have caused the breach of an oral agreement by the SBA to sell instruments of indebtedness owned by the SBA. We hold that no viable claim existed and affirm the district court's judgment in favor of the defendants.

I.

In 1969 Auto Vac Company, Inc. borrowed $85,000 from a bank, evidencing the indebtedness by a note. The debt was secured by much of the company's personal property and by the personal guaranty of the company's president, Joseph Lane, and of his wife. The personal guaranty was itself secured by two deeds of trust on real property comprising the Lanes' personal residence and a family farm. Ninety percent of the indebtedness to the bank was also guaranteed by the SBA. The plaintiffs in the instant suit (who own 80% of Auto Vac's stock) were not yet shareholders; consequently, they executed no documents in connection with the SBA-guaranteed loan.

By 1971, the company had defaulted on some of its obligations under the loan, and, at the bank's request, the SBA purchased its guaranteed portion of the loan. The note and all supporting instruments were assigned by the bank to the SBA for servicing, with the bank retaining its 10% interest.

After the note matured in 1975, without full payment of the principal, the SBA called it, and a public auction was scheduled for January 29, 1976. The auction was to be coordinated with a similar public sale by Advancement, Inc., another creditor of Auto Vac, which held liens on some items. The original amount of the debt to Advancement was $45,000. The defendant, Glenn Peninger, was an SBA employee

(Loan Specialist, Portfolio Management) who managed the liquidation of the SBA-guaranteed loan to Auto Vac. He attended the public sale, which was conducted by the Furrow Auction Company.

According to the complaint, on January 28, 1976, plaintiffs agreed to an oral contract with the SBA (acting through its agent Peninger) and Advancement (by its agent Richard Wallace).[1] The alleged contract called for the notes, security agreements, and collateral interests under the loans to be assigned by the creditors to another corporation, Columbus Developers, Inc., owned by plaintiffs. In return, the SBA allegedly would receive a cashier's check for $60,409.07, and Advancement would receive a similar check for $44,579.40.

It was also asserted that on January 28, the Lanes agreed with Peninger to cover any deficiency on the SBA claim remaining after the proceeds of the public sale had been applied to the indebtedness, and they promptly placed sufficient funds in escrow with their attorney.

On January 29, 1976, five minutes before the scheduled 11:00 a. m. beginning of the auction, plaintiffs tendered their cashier's checks to Peninger, but he refused to accept them. The foreclosure sale of the collateral proceeded and yielded approximately $48,-000. Subsequent to the auction, the Lanes paid the remaining indebtedness, making the SBA whole and freeing their home and farm from the SBA's security interest.

An earlier suit than the present one instantly followed, in which the plaintiffs sought, *inter alia*, a restraining order against the completion of the sales. The trial court denied relief in view of 15 U.S.C. § 634(b)(1) (1976), which forbids "attachment, injunction, garnishment, or similar process . . . against the Administrator or his property," and we affirmed.

*Duncan v. Furrow Auction Co.*, 564 F.2d 1107 (4th Cir. 1977), *cert. denied*, 436 U.S. 904, 98 S.Ct. 2232, 56 L.Ed.2d 401 (1978).

Then on January 26, 1979, shortly prior to expiration of the applicable statute of limitations, plaintiffs filed two suits seeking damages for harm allegedly suffered as a result of the SBA's refusal to sell them the notes and security agreements. One is the present case in which the defendant is Peninger. The other, in the Court of Claims, is against the United States.

Reading the complaint in the instant case liberally, plaintiffs have alleged four distinct causes of action:

1. A violation of 15 U.S.C. § 634(b)(2) (1976) because the refusal to sell to them was unreasonable under the circumstances;

2. Improper inducement of Advancement to break its contract with plaintiffs;

3. A taking of property without adequate compensation in violation of the United States Constitution; and

4. A breach by Peninger of his asserted warranty of authority that he had the capacity to act for and bind the SBA.

Defendant moved for dismissal or, in the alternative, for summary judgment. The district court dismissed plaintiffs' complaint "for the reasons · set forth by the Fourth Circuit Court of Appeals in *Duncan; et al., v. Furrow Auction Co.*, 564 F.2d 1107 (1977)." Plaintiffs' route is difficult. Even if the suit is against Peninger solely in his individual capacity, 28 U.S.C. § 1500[2] may well oust the Court of Claims of jurisdiction of the companion suit, for the allegations make clear that Peninger was regarded throughout by the plaintiffs as acting for the Government, not on his private behalf. The complaint asserts that the "defendant Glenn Penninger [*sic*] *acting for the Small*

---

1. Advancement has not been sued in the present case; the action is solely against Peninger.

2. 28 U.S.C. § 1500 (1976) provides:
   The Court of Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in

any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

*Business Administration* failed and refused to perform said agreement . . . . Moreover, said defendant Glenn Peninger, *acting for the Small Business Administration* induced Advancement, Inc. to fail and refuse to perform said agreement . . ." (emphasis supplied).[3]

## II.

### A. *Unreasonableness.*

In all events, any claim asserted by the plaintiffs against the federal government is manifestly groundless. In *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), a farmer had entered a contract with an agent of the federal corporation in which the corporation undertook to insure 400 acres of reseeded spring wheat. Without the actual knowledge of either the farmer or the agent of the federal corporation, a regulation had been promulgated which prohibited insurance of reseeded spring wheat. The Supreme Court denied recovery on the purported contract stating: "Just as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents. 49 Stat. 502, 44 U.S.C. § 307 [appearing in its present form at 44 U.S.C. § 1507 (1976)]." 332 U.S. at 384–85, 68 S.Ct. at 3.

■ The SBA Administrator had published in the Federal Register a delegation of authority explicitly declaring that an employee in the position of Peninger did not have the authority to make the alleged contract.[4] Plaintiffs do not contradict the proposition that Peninger was without authority to negotiate and enter the contract on behalf of the SBA. Indeed, on their

appeal they contend that Peninger "acted beyond the scope of his authority as conceded by the government . . . ."[5]

The consequent absence of a contract under which the SBA owed any obligation to the plaintiffs disposed of any basis for complaint as to the reasonableness of the refusal by the SBA to sell to plaintiffs. We need not investigate whether, as plaintiffs assert, our statement in *Duncan v. Furrow Auction Co.*, 564 F.2d at 1107, was only a dictum which stated: "[N]othing required the Administrator to accept plaintiffs' offer to purchase the notes rather than to proceed with the foreclosure. Nothing indicates that this was unreasonable." 564 F.2d at 1109. Even if a dictum (and we are by no means convinced that the statement was not in fact a holding), the statement appears to us eminently correct and any claim on that basis against the Government must fail. Certainly the absence of any contractual obligation on the part of the Government eliminates the reason advanced by plaintiffs to show the unreasonableness of the SBA's conduct.

The statute, 15 U.S.C. § 634(b)(2), speaks only in terms of the *Administrator's* determining that terms, conditions, and consideration of any sale by him are reasonable. Assuming *arguendo* that a cause of action in damages against the Administrator (or an SBA employee in the employee's official capacity) might be inferred if terms, conditions, and consideration were unreasonable,[6] there is no language in the statute to permit inference of a cause of action against an SBA employee in his individual capacity.

### B. *Inducement of Advancement, Inc.*

■ As for the alleged contract with Advancement, there is nothing in the record

---

**3.** It seems highly probable that Peninger, even though recovery is sought from him individually, is, therefore, alleged to have been "acting or professing to act . . . under the authority of the United States." However, it is not part of our task, and we expressly refrain from addressing the effect of the instant case on the companion suit in the Court of Claims. *Cf. British Am. Tobacco Co. v. United States*, 89 Ct.Cl. 438 (1939), *cert. denied*, 310 U.S. 627, 60

S.Ct. 974, 84 L.Ed. 1398 (1940). *See generally*, Schwartz, *Section 1500 of the Judicial Code & Duplicate Suits Against the Government & Its Agents*, 55 Geo.L.J. 573 (1967).

**4.** 40 Fed.Reg. 11657, 11660 (1975).

**5.** See Brief for Appellants at 5.

**6.** A point as to which we express no opinion.

which would support the conclusion that the SBA or Peninger, acting individually, sought to induce Advancement to a breach. The sole allegation of the complaint was that Peninger, acting for the SBA, "induced Advancement, Inc. to fail and refuse to perform said agreement *in that Advancement, Inc.* . . . *refused to accept the cashier's checks* . . . *and refused to assign the Promissory Note, Security Agreement and/or collateral interest owned by Advancement, Inc. to Columbus Developers, Inc.*" (emphasis supplied). Such a non sequitur of purely conclusory pleading does not adequately spell out causation. Advancement could have declined to assign for a number of reasons, not the least a belief, not induced by any other party, that, in view of the SBA's position, its asserted contract with the plaintiffs was invalid. *Cf.* Restatement (Second) of Torts § 766, Comment j, para. 2 (1979).

## C. *The Constitutional Claim.*

██ The claim of a constitutional violation need not detain us long. It proceeds on the theory that the order of auction (bidding for all the security in a lump sum followed instead of preceded by bidding on each individual item) caused harm to the plaintiffs. However, as plaintiffs have alleged no contract according them any right in the properties, they lack standing to make the claim. Furthermore, the allegations make it clear that either Auto Vac, Inc. or Columbus Developers, Inc., the corporation to which the security interests were allegedly to be transferred, were the owners, not the individual plaintiffs. For that second reason, the plaintiffs also lack standing. We need not explore, therefore, the dubious proposition that every tort or breach of contract constitutes a claim of constitutional dimensions.

## D. *Breach of Warranty.*

██ Plaintiffs, of course, could not sue Peninger on the asserted contract with the SBA. First, there was no such contract, for plaintiffs acknowledge that Peninger, the only party alleged to have negotiated the agreement, lacked authority to enter the contract. *See* note 5 *supra.* Second, as to a claim *on the contract,* Peninger was a fully disclosed agent, and as such was not liable. *See* Restatement (Second) of Agency § 320 & Comment a (1958).

At most, plaintiffs are in a position to assert (though it is only with great liberality in the treatment of their pleading that it is possible to proceed as though they had done so) that Peninger wrongfully warranted that he had authority to bind the SBA. *See id.* § 329 & Comment g.

However, since plaintiffs were chargeable with knowledge that Peninger had no authority to bind the SBA to a contract for a sale of the assets admittedly belonging to the Government, it is simply untenable to contend, on the basis of the pleadings in this case, that Peninger implicitly warranted his authority.[7] Hence, there was no contract entered between the plaintiffs and the SBA, nor any representation by Peninger that, in making the alleged contract on behalf of the SBA, he had authority to do so. On that basis, there is no foundation for the fourth claim of an asserted breach of warranty. Dismissal was proper.

*AFFIRMED.*

---

7. *See* Restatement (Second) of Agency, § 331 (1958):

> A person who purports to make a contract, conveyance or representation on behalf of a principal whom he has no power to bind thereby is not subject to liability to the other party thereto if he sufficiently manifests that he does not warrant his authority and makes no tortious misrepresentation.