**DEL BORING TIRE SERVICE, Plaintiff,**

v.

**FEDERAL EMERGENCY MANAGEMENT AGENCY, Defendant.**

Civ. A. No. 79–593.

United States District Court,
W. D. Pennsylvania.

Aug. 4, 1980.

Robert G. Rose, Johnstown, Pa., for Del Boring Tire Service.

Judith K. Giltenboth, Pittsburgh, Pa., for Federal Emergency Management Agency.

## OPINION

ZIEGLER, District Judge.

### I. *History of Case*

This is a civil action to recover the proceeds allegedly due under a contract of insurance between plaintiff, Del Boring Tire Service, Inc., (Del Boring) and defendant, Federal Emergency Management Agency (FEMA). Jurisdiction is predicated on 42 U.S.C. § 4053. Presently before the court are the cross–motions of the parties for summary judgment. For the reasons set forth herein, the motion of defendant will be granted and the motion of Del Boring will be denied.

The stipulation of facts submitted by the parties establishes the following. Del Boring is a corporation engaged in the business of selling tires in the area of Johnstown, Pennsylvania. On February 11, 1977, Donald F. McLaughlin, President of Del Boring, applied for two policies of flood insurance through the Widmann–Fronheiser Insurance Agency (Widmann Agency). That same day, the Widmann Agency prepared the appropriate documents and, together with a premium check, forwarded them to the National Flood Insurers Association.[1]

On February 17, 1977, McLaughlin wrote to the Widmann Agency authorizing a cancellation of the two policies.[2] On March 8, McLaughlin completed NFIA's cancellation form, which was forwarded to the insurer.[3]

NFIA returned the cancellation form to the Widmann Agency on March 16, 1977, with an explanatory memorandum. Copies of the memo have apparently been misplaced or destroyed, but the parties have stipulated the memo stated that the cancellation could not be processed until the policies had been issued.

General Accident Fire & Life Assurance Corp., Ltd. (General Life), the appropriate servicing agency, processed and countersigned the initial application of plaintiff for the insurance coverage on March 21, 1977. The Widmann Agency received policies issued by NFIA on plaintiff's behalf on July 15, 1977. On the same day, the Widmann Agency returned the policies to NFIA, citing McLaughlin's cancellation letter of February 17, 1977.

On July 20, 1977, the Johnstown area was inundated with flood waters causing severe damage to the facilities of Del Boring.

Plaintiff's cancellation notice was not countersigned and processed by General Life until October 27, 1977. On November 17, 1977, General Life issued two checks payable to Del Boring for the premiums paid to NFIA. Plaintiff received the drafts on December 15, 1977, but McLaughlin refused to endorse them. On that same day, plaintiff submitted a claim for flood loss under the policies, which was denied by defendant in May of 1978. This action followed.

### II. *Discussion*

FEMA premises its motion for summary judgment on two alternative grounds: (1) plaintiff's letter of February 17, 1977, and its submission of a cancellation form on March 8, 1977, coupled with the return of the insurance policies on July 15, 1977, constituted a cancellation of the contract of insurance; or (2) if the policies were not cancelled, Del Boring's failure to submit a claim and proof of loss within 60 days as required by the contract negates any right to the proceeds.

McLaughlin's letter on behalf of plaintiff to the Widmann Agency dated February 17, 1977, provided as follows:

---

1. Defendant, FEMA, is the successor agency to National Flood Insurers Association.

2. *See* Exhibit 3 to Stipulated Facts.

3. *See* Exhibit 4 to Stipulated Facts.

I understand that this insurance does not become effective until 15 days after application, which would be February 26th. Please use this letter as your authorization to cancel this policy because it may be risky, but I just can not stand the expense. We are going to have to cancel it.

Acting on this letter, the Widmann Agency delivered to McLaughlin a NFIA document entitled "Cancellation Notice." McLaughlin signed the document and mailed it to NFIA.[4] Upon receipt of the policies on July 15, 1977, the Widmann Agency returned them, citing McLaughlin's cancellation letter of February 17, 1977. Defendant contends these acts constituted a cancellation of the insurance policies prior to the flood of July 20. Del Boring rejoins that defendant's obligation to refund "the excess of paid premiums" was a condition precedent to cancellation which must be strictly construed in order to render the cancellation effective.[5] Because we accept defendant's construction of the contract and reject Del Boring's position, we hold that plaintiff was not insured at the time of the loss and summary judgment must therefore be entered on behalf of defendant.

█ A cancellation of a contract of insurance is conditional only where the insured "unequivocally make[s] known to the insurance company the conditional nature of his act." *Palardy v. Canadian Universal Insurance Co.,* 360 F.2d 1007, 1010 (2d Cir. 1966). The intent of the insured to cancel the policy must be "clear and precise." *Id.*

*Commercial Standard Insurance Co. v. Farmers Alliance Mutual Insurance Co.,* 385 F.2d 826 (10th Cir. 1967) is apposite. The policy in *Commercial Standard* contained the following language:

> This policy shall be cancelled at any time at the request of the insured, in which case this Company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time.

*Id.* at 830, n.5.

In construing this clause, the court stated:

> [The insured] had the contractual right to request that the Commercial Standard policy be cancelled at any time. No action on the part of the insurance company was necessary to implement the request and consummate cancellation. If and when an insurance company receives an unequivocal request that a policy containing a provision such as that shown in the margin be cancelled, the policy is effectively cancelled as of the date requested; neither the consent of or action by the insurer is necessary.

*Id.* at 830.

█ In our judgment, the letter from McLaughlin dated February 17, 1977, and the submission of appropriate cancellation forms, coupled with the return of the policies on July 15, 1977, evinced a clear and unequivocal intent to cancel the policy. As such, Del Boring was not insured at the time of the flood and judgment is appropriate.

---

4. *See* Exhibit 4 to Stipulated Facts. The Cancellation Notice provided:

> Cancellation of Policy–This Policy may be cancelled at any time at the request of the Insured, in which case this Company shall, upon demand and surrender of this policy, refund the excess of paid premiums above the customary short rates for the expired time: provided, however, that the premium paid for the then current policy term shall be fully earned if the insured retains an interest in the property covered at the location described in the application and declarations form.

This language derives from Paragraph E of the Standard Flood Insurance Policy forms included in Appendix A to the federal regulations which govern the issuance of flood insurance policies 43 Fed.Reg. 2570 (Jan. 17, 1978).

5. We note in passing that plaintiff does not assert the doctrine of promissory estoppel in support of its claim. As such, we need not determine whether defendant's delay in processing the cancellation resulted in a reliance by plaintiff on the validity of the policies.

In order to facilitate appellate review, we shall discuss defendant's alternative contention. FEMA asserts that plaintiff's failure to file proofs of loss within the 60–day period required by the contract and federal regulations,[6] warrants imposition of summary judgment. We disagree.

In *Brakeman v. Potomac Insurance Co.*, 472 Pa. 66, 371 A.2d 193 (1977), the Supreme Court of Pennsylvania held that to avoid an obligation on the basis of the notice provisions of an insurance policy, the insurer must prove not only breach of the provision, but also that the insurer suffered prejudice as a consequence of the breach. Since the question of prejudice raises a question of fact, summary judgment on this ground would be inappropriate.

**6.** *See* Paragraph N to Appendix A of 43 Fed. Reg. 2570 (Jan. 17, 1978).