Benjamin COHEN, Plaintiff,

v.

FEDERAL INSURANCE ADMINISTRATION, et al., Defendants.

No. CV–82–0422.

United States District Court,
E.D. New York.

June 9, 1983.

Mishkin & Black, New York City, for plaintiff.

Raymond J. Dearie, U.S. Atty., E.D.N.Y., Beryl R. Jones, Brooklyn, N.Y., for defendants.

## MEMORANDUM AND ORDER

ALTIMARI, District Judge.

This is an action to recover on a policy issued under the Federal Crime Insurance Program ("FCIP") for losses allegedly sustained in a burglary of plaintiff's premises on or about January 31, 1981. Defendant, Federal Crime Insurance Program, refused to pay this claim. Plaintiff moved under Rule 12(f), Federal Rules of Civil Procedure to strike defendants' affirmative defenses. All the named defendants, except Howard Brodie, cross-moved to dismiss the complaint.

In a Report and Recommendation dated April 29, 1983, United States Magistrate David F. Jordan recommended that the Court grant plaintiff's motion and deny defendants' motion. By letter dated May 16, 1983, defendants objected to the Magistrate's recommendation.

## FACTS

On or about April 2, 1980, plaintiff purchased insurance in the amount of $10,000. covering his home in North Hills, New York. On or about January 30, 1981, plaintiff's home was allegedly burglarized, and he suffered a loss in excess of $25,000.00 (Cohen Aff. Par. 8). Sometime in early February, 1981, plaintiff notified the agent-broker who sold him the policy, Howard Brodie, that his home had been burglarized. (Cohen Aff. Par. 5; Brodie Aff. Par. 2). Mr. Brodie, after calling a toll free number provided by the Federal Crime Insurance Program's Abstract of Residential Application (Pl. Exh. A), advised plaintiff that the loss could only be reported on Form # 5, titled the "Crime Insurance Notice and Proof of Loss." (Brodie Aff. Par. 3). Mr. Brodie obtained a copy of Form # 5 and forwarded it to plaintiff. On March 12, 1981, approximately 40 days after the burglary, plaintiff "filed" Form # 5, the written notice and proof of loss, with Mr. Brodie (Cohen Aff. Par. 7; Brodie Aff. Par. 4). Though it is not stated in the complaint or in plaintiff's supporting affidavits, apparently Mr. Brodie did not forward said notice to the defendants until on or about April 21, 1981, approximately eighty days after the burglary and forty days after he had received it from plaintiff. (Pl. Memo. at 3). The FCIP received the notice of loss from Mr. Brodie on April 24, 1981 (Pl. Exh. D). In a letter dated June 11, 1981, the FCIP denied coverage as a result of plaintiff's failure to comply with a policy provision

requiring an insured to "File a detailed proof of loss, duly sworn to, with the insurer through its authorized agent within 60 days after a discovery of loss." (Pl. Exh. D).

The Federal defendants to this action have asserted five affirmative defenses. Basically, they claim that plaintiff failed to comply with the terms of the policy requiring him to file a notice of proof of loss within 60 days from the date of loss, and that the complaint, therefore, states no cause of action. Defendants also asserted the defense of sovereign immunity. At a conference before Magistrate Jordan, however, the parties orally agreed to the substitution of the proper party defendant, the Director of the Federal Emergency Management Agency.

Plaintiff argues that Mr. Brodie was an "authorized agent" of the FCIP empowered to receive the notice of proof of loss on behalf of the defendants. Alternatively, he claims that since the program's abstract of residential application does not provide for filing a proof of loss, the provision of the insurance policy so providing is ineffective. Plaintiff cites no authority in support of his second, and to say the least novel claim.

Defendant takes the position that under the insurance policy, and the statutes and regulations applicable thereto, Mr. Brodie was not the FCIP's authorized agent for the purpose of filing the proof of loss required under the policy. Plaintiff's complaint, they argue, does not contain allegations establishing compliance with the terms of the policy and, as such, states no cause of action.

## DISCUSSION

■ The standard residential crime insurance policy issued to plaintiff provides in pertinent part:

"4. Insured's Duties When Loss Occurs. Upon knowledge of loss or of an occurrence which may give rise to a claim for loss, the insured shall (a) give notice thereof as soon as practicable to law enforcement authorities and to the Insurer through any of its authorized agents, and

(b) file detailed proof of loss, duly sworn to, with the insurer through its authorized agents within sixty (60) days after the discovery of loss."

"8. *Action Against Insurer.* No action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy ...." (Pl. Exh. B).

Several issues must be resolved; (a) was Howard Brodie the FCIP's authorized agent for purposes of filing a notice of proof of loss; and (b) if Mr. Brodie was not an authorized agent, is plaintiff precluded from recovering on the policy due to his filing a notice of proof of loss approximately 83 days after the alleged burglary. (Pl. Exh. D).

## THE APPLICABLE REGULATIONS

Plaintiff's insurance policy is explicitly made subject to the crime insurance provisions of Title VI of the Housing and Urban Development Act of 1970, 12 U.S.C. Section 1749bbb–10a *et seq.,* and the regulations issued thereunder, 44 C.F.R. Parts 80–83. The policy form is prescribed by 44 C.F.R. Section 83.26.

Part 80 of the regulations, titled Description of Program and Offer to Agents, contains the following relevant sections:

Section 80.1 defines "agent or broker" as: "any person authorized to engage in the property insurance business as an agent or broker under the laws of any State."

Section 80.4(e) provides in pertinent part that:

"Such agent or broker is the *agent or broker of the insured* and is not an agent of the Federal government nor any Federal agency, *except as otherwise expressly provided herein.*" (Emphasis added.)

Section 80.4(g) adds that:

"Neither this Section 80.4 nor any acceptance of this offer shall be deemed to confer upon any agent or broker any authority to act for, represent, or bind the insurer or the United States except as otherwise expressly provided herein."

Section 80.4(f) provides the first instance wherein the regulations empower the agent or broker to act as the insurer's agent. It provides that:

"Insured will be billed directly by the insurer for all installment and renewal payments and insured should make payment by check or money order payable to the Federal Crime Insurance Program and mail such payment to the insurer and not to the agent or broker. But, nevertheless, in the event that an insured makes a timely installment payment of the current premium (after the initial payment submitted with the application) to any agent or broker, proof, submitted by the insured, the agent or the broker of the timely receipt by the agent or broker may be deemed by the Administrator to be proof of timely payment to the insurer so that the insured will not be penalized because of an error or omission on the part of the agent or broker in forwarding the payment to the insurer."

Part 81 of the regulations, titled Purchase of Insurance and Adjustment of Claims, contains the following relevant sections:

Section 81.8(a) provides that:

"Inquiries or complaints about the Federal crime insurance program should initially be directed to the *property owner's agent or broker* or to the servicing company designated for the area in which the premises are located." (Emphasis added.)

Section 81.6 provides the second instance wherein the regulations expressly empower the insured's agent or broker to act as the insurer's agent. It provides that:

"Losses under a Federal crime insurance policy which exceed the applicable deductible may be reported either to the agent or broker through whom the application was submitted, or directly to the servicing company designated for the area in which the loss occurs. The claimant will be required to report all pertinent information, including a description of the loss, time, place, ownership, manner of acquisition, cost, depreciation, current value, amount of claim, and whether the insured has incurred previous losses under the policy. *A sworn proof of loss statement must be submitted to the adjuster or servicing company that processes the claim.*"

Thus, while losses which exceed the applicable deductible may be reported to the insured's agent or broker, the claimant must submit a proof of loss statement to the adjuster or servicing company that processes the claim.[1] The agent or broker is not expressly empowered to act as the insurer's agent for purposes of filing the proof of loss statement. Whether intentional or not, the regulations are precise; the agent or broker is the insured's agent except where the regulations expressly provide otherwise. As shown, there are specific instances wherein the regulations clearly allow for the agent or broker to act on behalf of the FCIP. Acceptance of the proof of loss from the insured, however, is not such an instance.

The Court concludes, therefore, that the FCIP's interpretation of its regulations is reasonable and correct as a matter of law. *See Dietsch v. Schweiker,* 700 F.2d 865, 868 (2d Cir.1983) (great deference should be given to an agency's construction of its own regulations.)

### EFFECT OF REGULATIONS

■ The remaining question becomes the effect of the regulations on the parties'

---

1. 44 C.F.R. § 80.1(2) defines adjuster as: "any person engaged in the business of adjusting loss claims arising under property insurance policies issued by an insurance company. The term also includes the staff adjusters of servicing companies."

44 C.F.R. § 80.1(14) defines servicing company as: "an insurance company or other organization that has entered into an agreement with the insurer to issue and service Federal crime insurance policies on the insurer's behalf in one or more states or areas eligible for the sale of such insurance."

Safety Management Institute ("SMI") has been designated to act as servicing company for the FCIP. *See* 44 C.F.R. § 80.6.

In addition, 44 C.F.R. § 80.6(b)(10) provides that servicing companies shall "[r]eceive, control, and account for all crime insurance claims submitted within its servicing area."

contract of insurance. The contract is *unambiguous*. Like the abstract, it provides that it is subject to the applicable regulations.

The Court finds the case of *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947) particularly instructive. There, respondents applied for insurance under the Federal Crop Insurance Act to insure their wheat crop. In so doing, they informed the Bonneville County Agricultural Conservation Committee, which was acting as the Federal Crop Insurance Corporation's ("FCIC") agent. The Committee erroneously advised the respondents that the entire crop was insurable. Unbeknownst to the Committee and respondents, however, was that the Wheat Crop Insurance Regulations, which were applicable to the contract, excluded part of respondent's crop from coverage.

Subsequently, most of respondent's crop was destroyed. The FCIC refused to pay the loss stating that the Wheat Crop Insurance Regulations barred recovery as a matter of law.

The Supreme Court, after first pointing out that FCIC must be differentiated from a private insurance company, stated that:

"Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority."

*Id.* at 384, 68 S.Ct. at 3.

The Court continued:

"[T]he Wheat Crop Insurance Regulations were binding on all who sought to come within the Federal Crop Insurance Act, regardless of actual knowledge of what is in the Regulations or of the hardship resulting from innocent ignorance." *Id.*

Indeed, pointed out the Court, the wheat regulations were incorporated by reference in the application. Thus, the FCIC did not err in refusing to pay the respondents' claims. *See, also, Mock v. United States,* 183 F.2d 174 (10th Cir.1950); *Felder v. Federal Crop Ins. Corp.,* 146 F.2d 638 (4th Cir. 1944); *Byrne v. Federal Crop Ins. Corp.,* 289 F.Supp. 873 (D.Minn.1968); *United States v. Blackburn,* 109 F.Supp. 319 (E.D.Mo. 1952).

In the instant action, the Federal Crime Insurance Regulations explicitly limited defendant Brodie's authority to act as the FCIP's authorized agent. Clearly, that authority did not encompass receiving proof of loss claims. Under the reasoning of *Federal Crop Ins. Corp.,* plaintiff is charged with knowledge of defendant Brodie's lack of authority, even though Brodie himself may have been unaware. In other words, plaintiff is charged with knowledge of the regulations which, the Court believes, specifically provide that Brodie, as an agent or broker, is not the FCIP's authorized agent for purposes of filing a proof of loss claim within sixty days.

### FAILURE TO FILE A NOTICE OF LOSS WITHIN 60 DAYS

■ Having determined that plaintiff failed to file a notice of proof of loss with the FCIP within 60 days, the dispositive question then becomes the effect of this failure.

Several courts have held that failure to file a notice of proof of loss bars recovery on a policy issued under the FCIP. *See, e.g., Chong Son Back v. Giuffrida,* No. 82 CV 2029, slip. op. (E.D.N.Y. April 30, 1983) (McLaughlin, J.); *Williamsburgh Doll & Novelty Corp. v. Giuffrida,* 560 F.Supp. 84 (E.D.N.Y.1982) (Nickerson, J.). Indeed, "the courts have almost invariably denied recovery where the claimant failed to comply with proof of loss requirements found in insurance policies issued under Federal programs." *Cross Queen, Inc. v. Director, Fed-*

*eral Emergency Management Agency,* 516 F.Supp. 806, 809 (D.V.I.1980); *Pavone, Inc. v. Secretary of Housing & Urban Development,* 547 F.Supp. 230 (D.Conn.1982); *Zeil Realty Corp. v. Director, FEMA,* 1982 Fire & Casualty Cas. (CCH) 253 (S.D.N.Y.1981); *Harper v. National Flood Insurers,* 516 F.Supp. 725 (M.D.Pa.1981); *Continental Imports, Inc. v. Macy, Director, FEMA,* 510 F.Supp. 64 (E.D.Pa.1981). Moreover, while the general rule is that an insurer is deemed to have waived the right to demand proof of loss by engaging in conduct that would lead the insured reasonably to believe that it need not be filed, if the insurer is an agency of the United States, the waiver doctrine does not apply. *See Williamsburgh Doll & Novelty Corp. v. Giuffrida,* 560 F.Supp. at 85; *Cross Queen, Inc. v. Director, Federal Emergency Management Agency,* 516 F.Supp. at 809.

On the other hand, several courts, for various reasons, have held that failure to file a timely notice of proof of loss does not bar an insured's recovery. *See, e.g., Beck v. Director, FEMA,* 1982 Fire & Casualty Cas. (CCH) 483 (N.D.Ohio 1981); *Brennan v. FEMA,* 1981 Fire & Casualty Cas. (CCH) 841 (D.Mass.1981); *Del Boring Tire Serv. v. FEMA,* 496 F.Supp. 616 (W.D.Pa.1980); *Knisely v. Federal Crop Ins. Corp.,* 334 F.Supp. 425 (S.D.Ohio 1971).

■ The Court believes that the proper construction of the contract term requiring that a notice of loss be filed within a specified time period lies somewhere in between the two extremes. Where the insured has completely failed to supply a notice of proof of loss, the argument in favor of denying recovery is strong, though surely not singularly persuasive. Where, however, the insured has filed a notice of loss, but has done so without the relative time period allowed, the equities shift in favor of not denying recovery outright.

In reaching a decision on whether to allow recovery, a Court should consider several factors:

1. Was a notice of loss filed;

2. If yes, how many days after the time allowed;

3. Why was the notice filed late;

4. Did the insurer have notice of the loss prior to the filing of the notice of claim itself; and

5. Was the insurer prejudiced by the late filing, or failure to file, of a notice of proof of loss.

Each case must be analyzed and decided on its own facts, giving effect to the above factors as well as to any others that in fairness justify consideration. The question of prejudice, however, should be at the forefront of the Court's analysis.

■ In the case at bar, the Federal defendants acknowledged receipt of a notice of loss on April 24, 1983. (Pl. Exh. D). It is uncontested, therefore, that a notice was filed, albeit a late notice. Moreover, the notice was only 24 days late, and was due to an apparent error or failure of memory on the part of the insured's agent, Howard Brodie. (*See, e.g.* 44 C.F.R. Section 80.4 (F)). Defendants have to this date not argued that the late filing served to prejudice them in any manner, and it appears that *they in fact received oral notice of the loss early on.*

Applying a rule of reason, *Knisely v. Federal Crop Ins. Corp.,* 334 F.Supp. at 429, the Court will not dismiss the complaint or preclude recovery "on the basis of an alleged technical failure to comply with procedural niceties." *Brennan v. FEMA,* 1981 Fire & Casualty Cas. (CCH) at 842.

"A motion to dismiss should not be granted unless it is clear that plaintiffs could not prove any set of facts in support of their claim which would entitle them to relief." *Brick v. Dominion Mortg. & Realty Trust,* 442 F.Supp. 283, 292 (W.D.N.Y.1977); *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

On the other hand, the Federal defendants' affirmative defenses are not clearly insufficient as a matter of law, in that defendants may contend and establish that they did not receive oral notice of the loss prior to the 60 day period, and that they

were prejudiced by the late filing of a notice of proof of loss. *See Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1057 (5th Cir. 1982); *reh'g denied,* 683 F.2d 1373 (5th Cir. 1982); *cert. denied,* —— U.S. ——, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983); see, Wright & Miller, *Federal Practice and Procedure,* Section 1381, at 801 (1969). It appears unlikely, however, that such an argument would have any merit in light of the facts of this case. Nevertheless, the issue exists and must be resolved at trial by the trier of the facts.

For the reasons heretofore stated, the Federal defendants' motion to dismiss is denied and the plaintiffs' motion to strike defendants' affirmative defenses is denied.

SO ORDERED.