Michael J. TREMBLAY,
Appellant (Plaintiff),

v.

George McCreidie "Scotty" REID, individually; Charles H. Garey, individually and in his capacity as Chief of the Cheyenne Fire Department; Lt. James Herrin, individually and in his capacity as Internal Affairs Officer of the Cheyenne Fire Department; the City of Cheyenne, a Municipal Corporation organized pursuant to the laws of the State of Wyoming; and the Civil Service Commission of the Fire Department of the City of Cheyenne, Appellees (Defendants).

No. 84–98.

Supreme Court of Wyoming.

May 28, 1985.

Rodger McDaniel and Jennifer Hager of Southeast Wyoming Law Offices of

McDaniel and Salazar, Cheyenne, for appellant.

Gary R. Scott of Hirst & Applegate, Cheyenne, for appellees.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

ROONEY, Justice.

Appellant's amended complaint alleged that appellee Reid slandered him and that the other appellees unlawfully denied him employment by the Cheyenne Fire Department as a fire fighter. The slander action was severed. In the remaining case, summary judgment was entered in favor of appellee Garey, Chief of the Cheyenne Fire Department, and judgment was entered in favor of the other appellees after a trial to the district court.

We affirm.

Appellant words the issues on appeal as follows:

"I. ARE THE APPELLEES ESTOPPED FROM DENYING APPELLANT TREMBLAY A POSITION AS FIRE FIGHTER BY THE DOCTRINE OF PROMISSORY ESTOPPEL TO THE CIRCUMSTANCES OF THIS CASE?

"II. WERE THE CIVIL SERVICE COMMISSION'S MEDICAL AND HEALTH STANDARD REQUIREMENTS ON HEIGHT, WEIGHT AND VISION SELECTIVELY ENFORCED AND, THEREFORE, INVALID?

"III. DID THE COURT INCORRECTLY CONSTRUE THE VISION ACUITY STANDARDS SET OUT IN THE RULES AND REGULATIONS OF THE FIRE DEPARTMENT CIVIL SERVICE COMMISSION?

"IV. DID THE COURT ABUSE ITS DISCRETION BY SEVERING THE ACTION AGAINST GEORGE McCREIDIE 'SCOTTY' REID?"

The first two issues are founded on the contention that the trial court erred in findings of fact. Appellant contends that he was unconditionally promised a position as a fire fighter, and appellees contend that the availability of the position was conditioned upon meeting vision requirements. Whether the promise was conditioned or unconditioned is a question of fact. Appellant's contention that the vision requirements were selectively enforced was denied by appellees. Again, whether or not the requirements were selectively enforced is a question of fact.

█ The standard for review of factual issues is whether or not there was substantial evidence to support the finding of the trial court, and, in doing so, we assume evidence in favor of the successful party as true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may reasonably and fairly be drawn from it. *Distad v. Cubin*, Wyo., 633 P.2d 167, 180 (1981); *Western National Bank of Lovell v. Moncur*, Wyo., 624 P.2d 765, 766 (1981).

In granting the summary judgment to appellee Garey, the trial judge, the Honorable Joseph F. Maier, set forth in an Opinion Letter the factual background as then before him and from which he found no genuine issue as to a material fact with reference to the claim for relief against appellee Garey. The letter reads in pertinent part:

"2. In support of the motion for summary judgment there was filed an affidavit an affidavit [sic] of Chief Charles H. Garey which refers to an exhibit A which is sworn to be a true and complete copy of the medical and physical examination record which was submitted by Michael J. Tremblay when he applied for a position as a fire fighter. This medical report shows the plaintiff's vision in the left eye to be 20/70 and the medical examiner who signed the report indicated that the applicant was qualified 'except for vision in left eye.'

"3. The affidavit of defendant Garey further states: 'That the reason he refused to hire Michael J. Tremblay as a fire fighter with the Cheyenne Fire Department was that two different eye examinations given Mr. Tremblay by quali-

fied physicians indicated that Mr. Tremblay had 20/70 and 20/60 vision in his left eye. Such vision is inadequate and substandard according to the Rules and Regulations of the Cheyenne Fire Department Civil Service Commission. That there were no other reasons for he not hiring Michael J. Tremblay as a fire fighter for the Cheyenne Fire Department.'

"4. The affidavit of defendant Garey further states that an exhibit C that is attached is a true and complete copy of the notice which was published in the Cheyenne Eagle-Tribune on or about 1 May 1981. This notice is entitled, 'Fire fighter exams announced' and in the notice it was further stated, 'Applicants must be between the ages of 21 and 32 and have visual acuity of not less than 20/30 with either eye and 20/20 combined. Corrective lenses may be worn for vision of not less than 20/30. A physical examination will be given the applicant by the Civil Service Commission medical examiner at the applicant's expense after the entrance exam has been passed....'

"5. The affidavit of the plaintiff states, in part, as follows:

" 'I reported to Chief Garey's office where I was informed that I had the job if I were still interested, and further was told how many hours I was to work, the amount of pay I would earn, the benefits I would be receiving, and that I should begin learning the location of the streets in the City of Cheyenne. I was further informed that I was to report to the new Western Hills fire station on Tuesday, February 1, 1983, to begin work with one month of training, was told where to park my car and to purchase a pair of Levis ™ for wear during training. Neither the chief nor anyone else ever told me that I must pass an additional physical examination before I was hired. During the above described meeting with Chief Garey, I was informed that an appointment had been made for me for Wednesday, January 12, 1983, at 1:30

P.M. at the office of Internal Medicine Group for a physical examination, and further that the results of that physical examination should be delivered by me to the chief as soon as the doctor made the results available.... On January 17th I received a call asking if I would be at the Fire Administration Office at 10:30 that morning. Upon arrival at the Fire Administration Office I was escorted to Chief Garey's conference room and was told I was disqualified because my vision did not meet civil service requirements....'

"6. The affidavit of J. Arling Wiederspahn filed by the plaintiff in opposition to the motion for summary judgment states in part as follows:

" 'Attached to my affidavit is a true and accurate copy of the civil service commission rules as they existed from the 23rd of January, 1959, until September of 1979. The vision rules in effect under the attached rules are identical to those vision standards adopted under the rules promulgated in 1979....'

"The vision requirements thus referred to in the affidavit of Mr. Wiederspahn provide as follows from the attached copy of the rules:

" '1. Vision:

" 'Not less than 20/30 with either eye or 20/20 with both eyes only acceptable; no glasses allowed; ...'

"Based on all of the foregoing, the Court concludes that there is no material issue of fact as to the plaintiff's failure to meet the vision requirements of the Firefighters Civil Service Commission Rules and there is no material issue of fact that the defendant Garey refused to hire the plaintiff for the reason that his vision did not meet these requirements and for no other reason. The affidavits of plaintiff and those submitted in his behalf do not raise an issue as to these last cited facts.

"The affidavits submitted by plaintiff, however, do in the Court's opinion raise an issue of fact as to whether the Fire Department Civil Service Commission

Rules and Regulations as to vision have been in the past selectively enforced and whether the same are in fact valid and reasonable rules and regulations. The distinction must be clearly noted, however, that in none of the plaintiff's affidavits or supporting material is it alleged by any competent witness under oath that the *defendant Garey* selectively applied these rules to this plaintiff or to others or that the *defendant Garey* refused to hire the plaintiff for any reason other than his failure to meet these vision requirments [sic]."

After the trial, Judge Maier made the following Findings of Fact:

"1. In May, 1981, plaintiff, Michael Tremblay, successfully completed all written, oral, and agility examinations as required for service with the Fire Department of the City of Cheyenne.

"2. Chapter III, Section 1(g) of the Rules and Regulations promulgated by the Civil Service Commission for the Fire Department of the City of Cheyenne requires applicants to have vision of '20/30 in either eye.' Vision in plaintiff's left eye was determined to be 20/70 in an examination conducted by Internal Medicine Group on January 12, 1983; and a subsequent examination a few days later conducted by Dr. Stadnik indicated the vision in plaintiff's left eye was evaluated at 20/60.

"3. In January, 1983, Fire Chief Charles Garey disqualified plaintiff for an available position with the Fire Department of the City of Cheyenne because plaintiff's vision did not meet the standard established by the Civil Service Commission in their rules (see above).

"4. Of the group which took the written examination with plaintiff in May of 1981, Chief Charles Garey had disqualified at least six other applicants for failure to meet the vision standards before plaintiff was disqualified for that reason.

"5. No evidence indicates that Chief Garey had ever waived the vision requirements with regard to any applicant.

"6. The alleged height and weight standards, which the evidence shows Chief Garey did waive in several separate instances, are not part of the rules and regulations of the Civil Service Commission for the Fire Department as last published and promulgated in 1979.

"7. The Rules and Regulations of the Civil Service Commission, as last published and promulgated in 1979, provide that an applicant must pass the physical examination before being hired (Chapter IV, Section 5).

"8. Following his disqualification by Chief Garey for failure to meet the vision standards, plaintiff did not attempt to obtain a review of this ruling from the Civil Service Commission for the Fire Department of the City of Cheyenne.

"9. The vision requirements of the Rules and Regulations of the Civil Service Commission for the Fire Department of the City of Cheyenne were waived with regard to a fireman named Dean Howard in about 1953 or 1954, which was before Chief Garey was employed with the Fire Department of the City of Cheyenne.

"10. Charles Garey became chief of the Fire Department in 1979; his predecessor as chief was Kenneth Troy Wynn, who was employed on the Cheyenne Fire Department from May, 1959, to May, 1979, and was chief from 1974 to 1979.

"11. That the vision requirements of the Rules and Regulations promulgated by the Civil Service Commission for the Fire Department of the City of Cheyenne were never waived for any applicant during the term of Chief Wynn, either by Chief Wynn or by the Civil Service Commission.

"12. The plaintiff's vision failed to meet the requirements of Chapter III, Section 1(g) of the Rules and Regulations promulgated by the Civil Service Commission of the Fire Department of the City of Cheyenne.

"13. The defendants failed and refused to hire the plaintiff as a fireman for the sole and only reason that his vision did

not meet the requirements of the rules and regulations as set forth above, and for no other reason.

"14. At all times relevant to the case under consideration, the Rules and Regulations promulgated by the Civil Service Commission for the Fire Department of the City of Cheyenne, as amended in 1979, were on public record as required by the Wyoming Administrative Procedure Act (W.S.1982 §§ 16–3–101 through 16–3–115).

"15. The published notice by which the City of Cheyenne officially solicited applicants for examination for positions with the Fire Department in 1981 specificlly [sic] referred to the physical examination and vision requirements.

"16. At no time relevant to the issues before this Court did defendants, acting in concert or separately, represent to the plaintiff that it was not necessary for him to take and pass a physical examination before being employed with the Fire Department of the City of Cheyenne.

"17. At no time relevant to the issues before this Court did defendants, acting in concert or separately, purposefully withhold from plaintiff information regarding the physical examination requirement.

"18. At no time relevant to the issues before this Court did defendants, acting in concert or acting separately, represent to plaintiff that the employment process was complete, and that plaintiff was unconditionally hired for employment with the Fire Department of the City of Cheyenne."

A careful review of the record under the standard set forth, supra, reflects substantial evidence to support the Findings of Fact made by Judge Maier. Accordingly, the Conclusions of Law reached by Judge Maier with reference to the first two issues presented on appeal, supra, properly follow from the facts, i.e.:

"3. The Rules of the Civil Service Commission for the Fire Department of the City of Cheyenne, as they relate to vision requirements, were not selectively enforced so as to render the rules in question invalid or unenforceable.

"4. The doctrine of promissory estoppel upon which plaintiff relies cannot be applied in this case for the reason that plaintiff's proof has failed to demonstrate the first and second elements of the three necessary elements of the doctrine, which are as follows:

"(1) Plaintiff must have lacked a knowledge of the truth and the means of acquiring the same;

"(2) Plaintiff must have relied in good faith on the conduct or statements of the party estopped, which reliance was reasonably justified;

"(3) Plaintiff must have acted or refrained from acting because of conduct or statement of the party to be estopped, which action or inaction was of such a character as to cause a change in his position or status to his injury, detriment, or prejudice." [1]

Judge Maier adequately commented in his Opinion Letter on these two Conclusions of Law as follows:

"Conclusion of Law No. 3 is based primarily upon the plaintiff's failure to carry his burden of proof to show that there was in fact selective enforcement. The findings of fact will indicate that the Court did not find any selective enforcement sufficient to render the rules in question invalid and unenforceable. Plaintiff submitted evidence in this regard, first, as to the waivers of the height and weight standards which are printed on the medical and physical examination record used by the Fire Department but which are not a portion of the rules and regulations currently in effect or which have been in effect since 1979. Consequently, the fact that when

---

1. The elements of promissory estoppel are set forth in Restatement of Contracts (Second) § 90 (1979), and were essentially adopted in *Cheyenne Dodge, Inc. v. Reynolds and Reynolds Co.,* Wyo., 613 P.2d 1234 (1980); *National Crude, Inc. v. Ruhl,* Wyo., 600 P.2d 716 (1979); and *Wood v. Trenchard,* Wyo., 550 P.2d 490 (1976).

either the Fire Department Civil Service Commission or Chief Garey have in the past waived the height and weight standard in certain instances, they did not constitute a waiver of the 'rules and regulations' of the Civil Service Commission for the Fire Department of the City of Cheyenne, because they were not a part of such rules and regulations; and secondly, plaintiff introduced evidence attempting to prove that the vision requirements had actually been waived in the past by either the Fire Department chief or the Civil Service Commission, or both. Unfortunately, as the findings of fact will indicate, the only evidence which this Court deemed trustworthy enough as the basis for a finding showed that an individual named Dean Howard had been employed in about 1953 or 1954 and that he had no vision in one eye. All of the other evidence was not credible and did not show any other waivers in the last 30 years. It is also interesting to note, as one of the findings of fact points out, that the chief had rejected six other individuals for 'bad eyes,' all of whom were in the group who had taken the written exam in May of 1981 at the same time plaintiff did. Had plaintiff succeeded in obtaining a waiver from the chief of his lack of vision under the rules, arguably the other six who were all above him on the list might well have had a legitimate complaint that the chief was applying the rules selectively. However, the evidence was that the plaintiff failed to demonstrate any instance of a waiver of the vision requirements during the term of Chief Garey of [sic] his predecessor Chief Wynn, which goes back at least ten years.

"Conclusion of Law No. 4 relates to the claim of plaintiff that he is entitled to recover from the City of Cheyenne under the doctrine of promissory estoppel. It should first be pointed out that the testimony presented at the trial was in conflict regarding the alleged promises made to plaintiff and also regarding whether or not the physical examination requirement was brought to plaintiff's attention. The published notice that the City was soliciting applicants for the written examination and agility tests back in 1980 or 1981 specifically referred to the physical examination and the vision requirements. In addition, the evidence indicates that the Rules and Regulations of the Civil Service Commission for the Fire Department of the City of Cheyenne were duly amended and readopted in their amended form in 1979 where they were on record in the County Clerk's office of Laramie County and in the Secretary of State's office, and consequently plaintiff should be charged with notice of these properly published rules and regulations of an administrative agency. See *Federal Crop Insurance Corporation v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *Duncan v. Peninger*, 624 F.2d 486 (4th Cir. 1980); *Cohen v. Federal Insurance Administration*, 565 F.Supp. 823 (1983). Plaintiff's own testimony was that he had difficulty in obtaining a copy from the various agencies to whom he applied, the City Attorney's office, the City Clerk's office, the Secretary of State's office, and the County Clerk's office, but his own testmony [sic] indicates that he did in fact receive a copy through his attorney at the time, Mr. Louis Mankus, when requested by Mr. Mankus prior to filing this lawsuit. The fourth conclusion of law sets forth the three elements of this theory of recovery of promissory estoppel. In view of the facts, plaintiff clearly did not lack a knowledge of the truth (of the requirements of a physical examination) nor did he lack the means of acquiring this knowledge.

"The Court would further comment that the second element of promissory estoppel is that the plaintiff must have relied *in good faith* on the conduct or statement of the party estopped which reliance was reasonably justified. Even if it were to be held that plaintiff lacked a knowledge of the truth and the means of acquiring the same of the vision requirements in the physical examination, as he

asserts, the Court finds it difficult to believe that the plaintiff had absolutely no awareness that a physical examination was required previous to employment or that an applicant could be disqualified for failure to pass that examination. Further, even the plaintiff's testimony does not say that the defendants or any of them told him that he did not have to take a physical examination; on the contrary it is the plaintiff's contention that they simply told him nothing. When this is considered in light of what was stated earlier as to the plaintiff's being charged with constructive knowledge of the regularly adopted rules and regulations, it seems clear that the plaintiff could not have, in good faith, justifiably relied upon the silence of the defendants as an affirmative statement that he did not have to take, and pass, a physical examination in order to be employed as a fireman. This, of course, is not to say that the Court finds that the defendants were silent; I am only assuming, for the purpose of this argument, the truth of the plaintiff's assertion."

Accordingly, with reference to appellant's first two issues, the undisputed facts at the time of the summary judgment against appellee Garey and the findings of fact after trial as to the other appellees, which findings were supported by substantial evidence, do not warrant (1) the application of estoppel against appellees, or (2) a conclusion that error occurred in the determination that the requirements of the civil service rules were not selectively enforced.

Appellant's third issue inquires whether or not the trial court properly construed the vision acuity standards set out in the Rules and Regulations of the Fire Department Civil Service Commission. In argument, appellant contends that Chapter III, § 1(g) of such Rules and Regulations is ambiguous in that it can be read to require vision of not less than 20/30 in at least one eye or to require vision of not less than 20/30 in each eye. Appellant contends that the requirement should be the former, but the court applied the latter. The section reads in pertinent part:

"Section 1. *Qualifications.* To qualify for initial appointment to the Cheyenne Fire Department, every applicant shall:

\* \* \* \* \* \*

"g. Vision:

"(1) Vision not less than 20/30 with either eye.

"(2) Vision not less than 20/20 with both eyes combined."

Judge Maier spoke to this issue in his Opinion Letter as follows:

"As to Conclusion of Law No. 1,[2] it is the plaintiff's contention, as I understand it, that the requirements of the subsection quoted as to vision is met if only one eye has the required 20/30 vision. Counsel did not touch upon this claim in his final argument and it may well be that it has been abandoned. It is mentioned, however, because of plaintiff's earlier assertion of this interpretation which he made from the witness stand.

"It is required that the interpretation set forth above be adopted in order to give any meaning to subparagraph (g)(1); if it were interpreted as plaintiff contends, i.e., that the requirement is that an applicant have 'vision not less than 20/30 with one or the other eye,' then as stated subparagraph (g)(1) would be meaningless because in every situation where an individual met the requirements of subparagraph (g)(2), of 'vision not less than 20/20 with both eyes combined,' that individual would have vision not less than 20/30 with one eye or the other. (See deposition of Dr. Anderson, pages 13 to 17.) In support of the construction placed upon the rule by the Court, it is submitted that the rules of construction set forth in *Thomson v. Wyoming In-*

---

**2.** Conclusion of Law No. 1 reads in pertinent part:

"1. Chapter III, Section 1(g) must be and is interpreted to require that every applicant, to qualify for initial employment in the Cheyenne Fire Department, shall have vision not less than 20/30 with each of two eyes. \* \*"

**398**

*Stream Flow Committee,* 651 P.2d 778 (Wyo.1982) and *State Board of Equalization v. Cheyenne Newspapers, Inc.,* 611 P.2d 805 (Wyo.1980), clearly require a construction so that no part of the statute or rule is inoperative or superfluous."

We find Judge Maier's reasoning to be sound.

■ Additionally, with reference to this issue, other than setting forth his position, appellant does not make any argument in support thereof, nor does he cite any authority in support of his position. We do not consider issues which are not supported by cogent argument and proper citation of authority. *Sheridan Newspapers, Inc. v. City of Sheridan,* Wyo., 660 P.2d 785, 790 (1983); *Young v. Hawks,* Wyo., 624 P.2d 235, 238 (1981).

In the fourth issue presented by appellant, appellant contends that the trial court abused its discretion in severing the action against George McCreidie "Scotty" Reid from the action against the other appellees inasmuch as the claims thereof were interwoven and arose from the same underlying events.

■ In his amended complaint, appellant set forth three "causes of action." They were captioned: "First Cause of Action: George McCreidie 'Scotty' Reid," "Second Cause of Action: Charles H. Garey and Lt. James Herrin," and "Third Cause of Action: City of Cheyenne." In the claim for relief against Reid, it was stated that certain statements made by Reid were false and defamatory. The complaint alleged that:

"15. On or about the 3rd day of June, 1983, Defendant GEORGE McCREIDIE 'SCOTTY' REID approached a group of several employees of the City of Cheyenne and said to them that Plaintiff had not been hired as a fire fighter because he was a sexual deviate and this Defendant further made other false, slanderous, slanderous per se, and defamatory statements about the Plaintiff."

Appellees City of Cheyenne and Garey filed a motion for trial before the court without a jury as to the claims for relief against them, pursuant to Rule 38, W.R.C.P., and for a trial separate from that of Reid pursuant to Rule 42, W.R.C.P. The motion was granted. Rule 38, W.R.C.P., provides in pertinent part:

"(a) *Right preserved.*—Issues of law must be tried by the court, unless referred as hereinafter provided; and issues of fact arising in actions for the recovery of money only, or specific real or personal property, shall be tried by a jury unless a jury trial be waived, or a reference is ordered. All other issues of fact shall be tried by the court, subject to its power to order any issue to be tried by a jury, or referred."

Rule 42, W.R.C.P., provides in pertinent part:

"(b) *Separate trials.*—The court in furtherance of convenience or to avoid prejudice, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues."

Appellant acknowledges that the decision to sever trials is within the trial court's discretion, citing *Thomas v. Roth,* Wyo., 386 P.2d 926 (1963), but he contends that the discretion was here abused.

"A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances. * * *" *Martinez v. State,* Wyo., 611 P.2d 831, 838 (1980).

Appellant demanded a jury. He prayed for damages, but he also prayed for a finding that appellee City of Cheyenne be required to hire him as a fire fighter. The action then was not for money only, and,

pursuant to Rule 38, W.R.C.P., supra, the issues of fact were for trial by the court. It was not within Reid's power to hire appellant and the action against him was for recovery of money only. To comply with appellant's jury demand and yet to meet the motion filed pursuant to Rule 38, W.R.C.P., a severance was necessary.

Additionally, the statement alleged to have been made by Reid was made 4½ months after appellant was disqualified for employment because of his eyesight. The action against Reid was a defamation action. The action against the other appellees was a breach of contract action.

Under the circumstances, it cannot be said that the court acted in a manner which exceeded the bounds of reason or could not reasonably conclude as it did in severing the issues. It did not abuse its discretion.

Affirmed.