887 F.2d 1024
 The ASCOT DINNER THEATRE, LTD. a Colorado limited
partnership, Plaintiff-Appellee/Cross-Appellant,
v.
The SMALL BUSINESS ADMINISTRATION, an agency of the United
States Government; Charles Heatherly,
Administrator,
Defendants-Appellants/Cross-Appellees.
 Nos. 86-1061, 86-1117.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 5, 1989.
 
 Brian Magoon, Loser, Fitzgerald, Magoon & Davies, P.C., Englewood, Colo., for plaintiff-appellee/cross-appellant.
 Peter R. Maier, Appellate Staff Civ. Div., Dept. of Justice, Washington, D.C. (Richard K. Willard, Asst. Atty. Gen., John F. Cordes and Linda J. Silberman, Attys., Appellate Staff Civ. Div., Dept. of Justice, Washington, D.C., Robert N. Miller, U.S. Atty., Denver, Colo., were also on the brief) for defendants-appellants/cross-appellees.
 Before HOLLOWAY, Chief Judge, ANDERSON, Circuit Judge, and SAFFELS, District Judge*.
 HOLLOWAY, Chief Judge.
 
 
 1
 The Small Business Administration (SBA) and its Administrator appeal a judgment awarding damages to the Ascot Dinner Theatre (Ascot),[1] an applicant denied a loan guaranty by the SBA. The district court held unconstitutional as applied here the SBA's "opinion molder rule," a regulation which disqualified certain businesses engaged in the formation, expression and distribution of ideas from receiving SBA loan guarantees. The court awarded $59,086.25 as damages arising from the unconstitutional denial of the Ascot application. Mission Trace Investments, Ltd. v. Small Business Administration, 622 F.Supp. 687 (D.Colo.1985).
 
 
 2
 Concluding that Ascot has on these facts no valid jurisdictional basis for a contract, tort or constitutional claim for damages against the SBA and its Administrator, when sued in his official capacity as he was, we reverse the award of damages. No claim of error is asserted by the defendants with respect to the district judge's adjudication that the rule as applied is invalid under First Amendment principles. Hence that ruling is not considered or disturbed.
 
 
 3
 * The facts were detailed by the district court. See 622 F.Supp. at 688-89. We recite the facts pertinent to our disposition and critical evidentiary support for them in our record. There is no challenge to the subsidiary historical facts found by the district judge.
 
 
 4
 Ascot was formed in 1982 to establish a dinner theatre in the Mission Trace Shopping Center in Lakewood, Colorado. In October 1982 Ascot signed a lease for the Center property with Pride, a Colorado partnership. Pursuant to the lease agreement, Ascot deposited $49,000 with Pride and agreed to pay an additional amount of not less than $1,100,000 for tenant improvements on or before January 15, 1983. Ascot thereafter paid $50,000 and obtained extensions of the due date to May 15, 1983.
 
 
 5
 In April 1983 Ascot's representative, Margaret S. McCool, met with Warner Knobe, president of the Columbine Valley Bank and Trust (Columbine), to obtain a loan for Ascot. Upon determining that Ascot was not eligible for a direct loan from Columbine, Knobe suggested an SBA guaranteed loan as an alternative. Columbine had a loan guaranty agreement with the SBA under which Columbine was the lender and the SBA the guarantor of loans, subject to the SBA's approval and its rules and regulations. Knobe provided McCool with the SBA loan guaranty application form.
 
 
 6
 On May 25, 1983 Pride again extended Ascot's payment due date to June 7, 1983. McCool then met with Pride on June 7 to discuss another extension. McCool completed the SBA application in late May or early June and returned it to Knobe who thereafter delivered it to the SBA. On June 9 or 10 Knobe discussed Ascot's eligibility with an SBA official. Knobe then talked with Ascot's attorney regarding the discussion Knobe had with the SBA official. On June 10 Ascot's attorney telephoned McCool and Ascot then paid an additional $50,000 for another lease extension.
 
 
 7
 The SBA District Director approved Ascot's creditworthiness on July 22, 1983, but final approval remained subject to a complete eligibility determination. Pride sent Ascot a default letter on July 28, 1983. On August 12, 1983 the SBA determined that Ascot was not eligible for a loan guarantee. The SBA has stipulated that 13 C.F.R. Sec. 120.2(d)(4), et seq. (1983), the "opinion molder rule" in effect at the time of Ascot's application, was the sole basis for denying Ascot's application and that absent the regulation, Ascot would have qualified for an SBA loan guaranty. I R. 3, Stipulations, at p 39.
 
 
 8
 It is undisputed that all personal contact and communications with SBA personnel were made by and through Knobe for the Columbine bank. No contact occurred between McCool or any other representative of Ascot and any personnel or officials of the SBA. After the loan guaranty was denied, Knobe requested an agency review to reconsider the denial based upon the opinion molder rule. This review affirmed the denial of the guaranty. II R., Knobe's testimony, 35-40.
 
 
 9
 Ascot's complaint followed. It sought declaratory relief, and also damages against the SBA and its Administrator in his official capacity for wrongful denial of the loan guarantee. Ascot asserted that promissory estoppel precluded the SBA from denying the loan application and that 13 C.F.R. Sec. 120.2(d)(4) (1983), the opinion molder rule involved here, was unconstitutional as applied.
 
 
 10
 After a bench trial in April 1985 the district court rejected the promissory estoppel claim because Ascot failed to demonstrate reliance on SBA representations. The court held, however, that the SBA regulation "unnecessarily" inhibited Ascot's First Amendment rights and that the SBA could not deny benefits to applicants solely because they engage in constitutionally protected expression. 622 F.Supp. at 702. The court awarded damages based on losses incurred after Ascot "relied on at least the possibility of obtaining SBA financial assistance." Id. at 703.
 
 
 11
 The SBA timely appealed. It argues that sovereign immunity precludes the award of damages against the SBA and the Administrator for losses of a loan applicant denied loan assistance on the basis of an agency regulation subsequently held unconstitutional. Opening Brief for Federal Defendants at 7. The SBA also says that its denial of the Ascot loan application did not proximately cause the injuries alleged by Ascot. On cross-appeal, Ascot seeks the $149,060 in damages denied by the trial court and argues that this loss in lease payments is also a consequence of the SBA denial and would not have occurred but for the denial of the guaranty.
 
 II
 Sovereign Immunity
 
 12
 In this case of first impression, Ascot says that the unconstitutional application of the opinion molder rule entitles it to recover damages on its claim whose "substance is that of a breach of contract rather than tort." Cross-Appellant's Reply Brief at 10. Ascot argues against the application of the Federal Tort Claims Act (FTCA), 28 U.S.C. Secs. 1346(b), 2671 et seq. (1976), which operates as an exclusive remedy, see Sec. 2679, and precludes claims arising from regulations on stated conditions. See Sec. 2680. Ascot contends that the SBA's refusal to grant guaranty assistance to an eligible applicant is in substance a breach of contract claim and only incidentally and conceptually also a tort claim. Cross-Appellant's Reply Brief at 9-10. The SBA asserts that Ascot asserts a tort claim, precluded by the FTCA, and that sovereign immunity also precludes any nontort basis of liability to Ascot.
 
 
 13
 We are persuaded that the controlling issue is that of sovereign immunity.[2] Absent the waiver of sovereign immunity, Ascot's claim cannot survive. It is established principle that the United States, as sovereign, "is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define the court's jurisdiction to entertain the suit." United States v. Testan, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1975) (quoting United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941)); United States v. Mel's Lockers, 346 F.2d 168, 169-70 (10th Cir.1965). Waiver of sovereign immunity cannot be implied, but must be unequivocally expressed. Testan, 424 U.S. at 399, 96 S.Ct. at 953-54.
 
 
 14
 Ascot argues that an unrestricted waiver of immunity arises in 15 U.S.C. Sec. 634(b)(1), which provides:
 
 Powers of Administrator
 
 15
 (b) In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter the Administrator may(1) sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property ....
 
 
 16
 We must disagree with Ascot's position on the waiver of immunity based on Sec. 634(b)(1) for reasons that follow.
 
 Tort Exclusion
 
 17
 We are persuaded that the consent to sue and be sued in Sec. 634(b)(1) does not establish a waiver of immunity so as to permit entertainment of Ascot's damages claim. Congress has integrated the "sue and be sued" statutes, such as Sec. 634(b)(1), within the overall scheme for allowing claims against the United States. In this scheme the Tucker Act, 28 U.S.C. Secs. 1346(a)(2), and 1491 (1973), provides the waiver of immunity and the jurisdictional grant for the district courts and Court of Claims to entertain nontort actions arising from the Constitution, statutes, regulations, and express or implied contract obligations of the Government.
 
 
 18
 However, Ascot's claim should be viewed as an alleged constitutional tort, a claim of unconstitutional application of the regulation known as the opinion molder rule, see Cross-Appellant's Reply Brief at 5, since as noted below there is no viable contractual basis for Ascot's case.[3] This leads us to the FTCA. It provides liability for the Government for certain tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. Sec. 2674; also Sec. 1346(b).[4]
 
 
 19
 The "sue and be sued" statutes such as Sec. 634(b) are subject to the exclusive tort provisions of the FTCA. In 28 U.S.C. Sec. 2679 Congress provided:
 
 
 20
 (a) The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title shall be exclusive.
 
 
 21
 Thus the express authority of any federal agency "to sue and be sued" does not alter the FTCA as the exclusive remedy for actions sounding in tort. Taylor v. Administrator of Small Business Administration, 722 F.2d 105, 109 (5th Cir.1983); Peak v. Small Business Administration, 660 F.2d 375, 377 (8th Cir.1981); Northridge Bank v. Community Eye Care Center, 655 F.2d 832, 835 (7th Cir.1981); Freeling v. FDIC, 221 F.Supp. 955, 956-957 (W.D.Okla.1962), aff'd on basis of district court's opinion, 326 F.2d 971 (10th Cir.1963).
 
 
 22
 Here 28 U.S.C. Sec. 2680 bars Ascot's damages claim as a challenge to the opinion molder regulation premised on a tort theory:
 
 
 23
 The provisions of this chapter and section 1346(b) of this title shall not apply to--
 
 
 24
 (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.
 
 
 25
 Section 634(b) of Title 15 U.S.C. must be construed in pari materia with Secs. 2679 and 2680 of the FTCA. Under the explicit terms of these FTCA sections, Ascot cannot maintain a tort claim against the SBA and its Administrator on these facts.
 
 
 26
 At the time Ascot applied for a guaranty, 13 C.F.R. Sec. 120.2(d)(4), (1983) barred a guaranty
 
 
 27
 (4) If the applicant is engaged in the creation, origination, expression, dissemination, propagation, or distribution of ideas, values, thoughts, opinions or similar intellectual property, regardless of medium, form, or content. Financial assistance to such applicants is barred in order to avoid Government interference, or the appearance thereof, with the constitutionally protected freedoms of speech and press; ...
 
 
 28
 Enterprises providing "theatrical productions" were expressly listed as ineligible. The regulation then listed applicants who were not precluded from financial assistance if "otherwise eligible" and who were engaged in providing printing, publishing, advertising and technical material, sound and visual reproduction, broadcasting and cable TV, nonacademic schools, and general merchandising and nonspecialty bookstores. Id. at (d)(4)(i) through (vii).
 
 
 29
 Even if the regulation facially discriminated against Ascot, Sec. 2680 explicitly precludes Government liability for damages under such a tort theory here. Ascot charges that the SBA discriminatorily applied the regulation to provide loan guarantees to entertainment centers, while denying this to Ascot's dinner theatre. The contention does not overcome the Sec. 2680 prohibitions. Then Sec. 2679, making the FTCA the exclusive remedy, completely forecloses such a tort recovery.
 
 
 30
 The FTCA provisions establish that "it was plainly the purpose of Congress to use the 'sue or be sued' clause in a narrow sense." F.H.A. v. Burr, 309 U.S. 242, 245, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940). In sum, Ascot is barred from recovery on a tort theory on these facts.
 
 III
 Contract Relief
 
 31
 Ascot resists analysis of its claim as a constitutional tort. It argues that the FTCA does not provide the exclusive remedy for its claim; that 15 U.S.C. Sec. 634(b)(1) provides the necessary waiver of sovereign immunity either because nontortious constitutional claims do not come within the FTCA, or because Ascot's claim "sounds in contract, rather than tort." Cross-Appellant's Reply Brief at 12. It says its claim is "akin to an action for breach of a loan guaranty commitment, and, therefore, its substance is that of a breach of contract, rather than tort." Id. at 10.
 
 
 32
 Ascot relies on Mar v. Kleppe, 520 F.2d 867 (10th Cir.1975), as a jurisdictional basis for its contract theory. We did hold there that there was a jurisdictional grant by Sec. 634(b) which permitted the consideration of the claim against the Administrator in his official capacity. The jurisdiction conferred was limited and the statute proscribed an injunction. However, we construed the statute to not preclude an action for damages or a declaratory judgment. Id. at 869. Mar is premised basically on the oral agreement there alleged with the SBA for a release of the plaintiffs as to their personal endorsement of the lease. Id. at 868. Thus the claim was bottomed on a specific contractual agreement that was averred. We do not view Mar as establishing a broad waiver of sovereign immunity under Sec. 634(b) for the assertion of a claim like Ascot's against the government or the SBA.[5]
 
 
 33
 In assessing Ascot's theory we note that there is no right or entitlement to a loan guaranty per se; nothing in the SBA legislation supports such an interpretation. See 15 U.S.C. Sec. 634(b)(6) (SBA administrator may "make such rules and regulations as he deems necessary to carry out the authority vested in him by or pursuant to this chapter"); Romeo v. United States, 462 F.2d 1036 (5th Cir.1972), cert. denied, 410 U.S. 928, 93 S.Ct. 1361, 35 L.Ed.2d 589 (1973) (SBA may deny loan which was initially approved upon discovery of applicant's disqualifying illegal activity); Copake Lake Development Corporation v. United States Government, 490 F.Supp. 386 (E.D.N.Y.1980) (where SBA withdrew loan authorization there is no entitlement of the applicant or court jurisdiction to compel the SBA to grant a loan); Raitport v. Chase Manhattan Capital Corporation, 388 F.Supp. 1095 (S.D.N.Y.1975) (the SBA statute does not create a private right of action nor does frustrated applicant have a right to financial backing). Moreover, while Ascot invokes the First Amendment, in conjunction with contractual theory, in Testan the Supreme Court stated that "we regard as unsound the argument ... that all substantive rights of necessity create a waiver of sovereign immunity such that money damages are available to redress their violation." Testan, 424 U.S. at 401, 96 S.Ct. at 954.
 
 
 34
 We reject Ascot's argument that there is waiver of sovereign immunity and a right to recover on a contractual theory. The record is devoid of any contract that was signed or orally agreed to by the SBA or its personnel.[6] Ascot does not demonstrate that the finding of no promissory estoppel was clearly erroneous, but it continues to rely on the promissory estoppel theory. It points to the trial judge's further finding that Ascot "relied on at least the possibility of obtaining SBA financial assistance. Moreover [Ascot] reasonably expected that the program would be administered in accordance with the Constitution." 622 F.Supp. at 703-04.
 
 
 35
 We cannot agree that such references to reliance or reasonable expectations bring Ascot's case within the waiver of immunity we found in Mar under 15 U.S.C. Sec. 634(b)(1). We allowed the recovery of damages in Mar; however, that decision like others was based on the existence of an oral or written contract. Id. at 868, 870; accord, Taylor, 722 F.2d 105, (where SBA twice approved application and obtained commitment fee from plaintiff, then breach of contract claim was allowed under Sec. 634(b)(1); Duncan v. Peninger, 624 F.2d 486 (4th Cir.1980); cert. denied, 449 U.S. 1078, 101 S.Ct. 857, 66 L.Ed.2d 800 (1981), (in absence of contract, plaintiffs lack standing to challenge SBA sale); Gilford v. United States, 573 F.Supp. 96, 98 (D.Colo.1983) (summary judgment improperly granted as promissory estoppel claim will lie against SBA based on its representation that loan was authorized and would be granted).
 
 
 36
 Ascot's arguments do not overcome the absence of a contractual foundation for its claim. There was no contract "but merely an ordinary declaration by the agency that it would consider such an application under the law, as it had to do." Eastport Steamship Corporation v. United States, 178 Ct.Cl. 599, 372 F.2d 1002, 1012 (1967); accord Simpkins v. Davidson, 302 F.Supp. 456, 457-458 (S.D.N.Y.1969) (loan applicant entitled to consideration of application as required by law but court cannot order SBA to grant loan). In Eastport, the plaintiff claimed that the Maritime Commission's failure to approve a potential sale had caused the loss of the sale and resulted in subsequent losses in obtaining another sale. The court concluded that "liability for damages occasioned by wrongful regulatory action smacks more of tort than of non-tortious obligation." Eastport, 372 F.2d at 1010. No matter how described or characterized, in the absence of a contract, the plaintiff-seller's claim "must be tortious." Id. at 1010-1013; accord Jackson v. United States, 216 Ct.Cl. 25, 573 F.2d 1189, 1199 (1978) (in absence of contract or authorized oral promises by government agent, the complaint sounds in tort, subject to the limitations of the FTCA); Federal Deposit Insurance Corp. v. Citizens Bank & Trust Co., 592 F.2d 364, 368-369 (7th Cir.), cert. denied, 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979) (in absence of contract plaintiff's claim is tort).[7]
 
 
 37
 We conclude that Ascot lacks a cognizable contract basis as the underlying substantive theory for invoking the jurisdictional grant and limited waiver of immunity of 15 U.S.C. Sec. 634(b)(1) and Mar v. Kleppe.
 
 The First Amendment
 
 38
 We have noted Ascot's assertion of its theory that it may maintain its suit against the SBA and its Administrator because it asserts a "non-tortious contract claim," emphasizing also that its "claim for damages, however, can be based on the First Amendment and should not be automatically categorized as a tort." Cross-Appellant's Reply Brief at 6, 12. We consider lastly whether Ascot's incorporation of its First Amendment constitutional claim within its theory removes the bar of sovereign immunity.
 
 
 39
 We are not convinced that the assertion of the constitutional claim saves Ascot's case. In fact, Ascot concedes that the constitutional amendments themselves "do not constitute a waiver of sovereign immunity." Cross-Appellant's Reply Brief at 11. However desirable a direct remedy against the government might be as a substitute for individual official liability, "... the sovereign still remains immune to suit." Martinez v. Winner, 771 F.2d 424, 442 (10th Cir.1985) (quoting Bivens v. Six Unknown Unnamed Agents, 403 U.S. 388, 410, 91 S.Ct. 1999, 2012, 29 L.Ed.2d 619 (1971) Harlan, J., concurring). Despite the constitutional claim injected, the damages claim against the SBA and its Administrator in his official capacity as asserted by Ascot is barred by sovereign immunity. See Clark v. Library of Congress, 750 F.2d 89, 103 (D.C.Cir.1984), and cases cited therein; Laswell v. Brown, 683 F.2d 261, 268 (8th Cir.1982), cert. denied, 459 U.S. 1210, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983); Garcia v. United States, 666 F.2d 960, 966 (5th Cir.), cert. denied, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982); Jaffee v. United States, 592 F.2d 712, 717-18 (3rd Cir.), cert. denied, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979); see also Mine Safety Co. v. Forrestal, 326 U.S. 371, 374-75, 66 S.Ct. 219, 221, 90 L.Ed. 140 (1945).
 
 
 40
 Accordingly, the award of damages in the judgment of the district court is
 
 
 41
 REVERSED.
 
 
 
 *
 The Honorable Dale E. Saffels, United States District Judge for the District of Kansas, sitting by designation
 
 
 [1]
 This case was originally filed under the name of Mission Trace Investments, Ltd. On March 3, 1988 Mission Trace filed a Certificate of Limited Partnership with the Colorado Secretary of State, changing its name to the Ascot Dinner Theatre, Ltd. Originally the suit named Administrator Sanders as a defendant. Administrator Heatherly was substituted later, consistently with Ascot's maintenance of the suit against the Administrator in his official capacity
 
 
 [2]
 Because we hold that Ascot fails to prevail on the controlling issue of sovereign immunity, we need not address the merits of Ascot's cross appeal to increase the amount of damages awarded by the district court. The cross-appeal is also barred by sovereign immunity
 
 
 [3]
 As a constitutional violation, Ascot's claim is more appropriately treated as a tort. In actions invoking 42 U.S.C. Sec. 1983, the Supreme Court has held that violations of constitutional rights "[create] a species of tort liability" in favor of persons deprived of the rights, privileges, or immunities secured to them by the Constitution. Carey v. Piphus, 435 U.S. 247, 253, 98 S.Ct. 1042, 1046-47, 55 L.Ed.2d 252 (1978); see also Wilson v. Garcia, 471 U.S. 261, 277, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985) (actions arising from constitutional violations which invoke Sec. 1983 are "more analogous to tort claims for personal injury, than for example, claims for damages to property or breach of contract"); Bent v. Commissioner of Internal Revenue, 835 F.2d 67, 69 (3rd Cir.1987) (unlawful abridgement of First Amendment right to express views is "tort type right"); but cf. DiPasalgne v. Elby's Family Restaurants, Inc., 640 F.Supp. 1312, 1314-1315 (S.D.Ohio 1986) (Sec. 1981 claims treated as contract for statute of limitations determination); Harrigan v. Sebastian's on the Waterfront, Inc., 629 F.Supp. 102, 105 (D.Virgin Islands 1985) (same)
 
 
 [4]
 For discussion of the congressional effort to systematize the federal statutes concerning waiver of immunity, see United States v. Mitchell, 463 U.S. 206, 212-217, 103 S.Ct. 2961, 2965-68, 77 L.Ed.2d 580 (1983) (history of Tucker Act); also Taylor v. Administrator of Small Business Administration, 722 F.2d 105, 109-110 (5th Cir.1983) (FTCA and "sue and be sued" statutes created claim exceptions for which recovery is proscribed or permissible only by other acts); Peak v. Small Business Administration, 660 F.2d 375, 377-378 (8th Cir.1981); (FTCA passed to end "piecemeal" approach to tort actions against Government) Northridge Bank v. Community Eye Care, Inc., 655 F.2d 832, 834-835 (7th Cir.1981) (the 15 U.S.C. Sec. 634(b) enactment after the FTCA does not alter the waiver of immunity from tort liability defined by the FTCA); Federal Deposit Insurance Corp. v. Citizens Bank & Trust Co., 592 F.2d 364, 368-371 (7th Cir.), cert. denied, 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979) (discussion of circuit decisions holding FTCA exclusively governs remedies respecting suable agencies)
 
 
 [5]
 Insofar as this opinion establishes a limitation or modification of Mar v. Kleppe, we are authorized by all the active judges of the court to state that the full court approves the interpretation of Mar herein, limiting that opinion to a jurisdictional grant where a contractual agreement is asserted; Mar is not interpreted to confer jurisdiction for the entertainment of claims against the SBA or its Administrator sued in his official capacity on a theory such as Ascot's which has no contractual basis
 
 
 [6]
 The district court properly denied the promissory estoppel claim in the absence of any evidence of the SBA making a promise to either McCool or Knobe as the bank's representative and intermediary for McCool. 622 F.Supp. at 688; II R. 46-48. The same evidentiary problem undermines Ascot's contract claim on appeal. While Knobe disagreed with the SBA's decision to deny the guaranty, he did not testify that there was any oral or written communication which could be construed as a contractual promise or be represented as such to McCool. Even if such communication or representation had occurred, the SBA would not be bound by such a lender's representation to the loan applicant. Benson v. U.S. Small Business Administration, 644 F.2d 1366, 1367-68 (9th Cir.1981) (SBA not bound by lender's representation in absence of facts showing SBA consented to such representation)
 
 
 [7]
 Ascot's reliance upon Claxton v. Small Business Administration, 525 F.Supp. 777 (S.D.Ga.1981), is misplaced as the reasoning argues against Ascot's claim being "in substance a breach of contract claim and only incidentally and conceptually also a tort claim." Id. at 782 (emphasis in original). The complete text of this statement adopted by the Fifth and Ninth Circuits demonstrate that Ascot fails to meet the threshhold element, the existence of a contract:
 Many breaches of contract can also be treated as torts. But ... where the 'tort' complained of is based entirely upon breach by the government of a promise made by it in a contract, so that the claim is in substance a breach of contract claim, and only incidentally and conceptually also a tort claim, we do not think that the common law or local state law right to 'waive the breach and sue in tort' brings the case within the Federal Tort Claims Act. Id. (emphasis in original) (citations omitted).