16 F.3d 417
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Counter-Defendant-Appellee,
v.
Julia A. ALTHOFF, Arthur R. Althoff,
Defendants-Counter-Claimants-Appellants.
 No. 93-2114.
 United States Court of Appeals, Tenth Circuit.
 Dec. 23, 1993.
 
 Before TACHA, BRORBY and EBEL, Circuit Judges.
 ORDER AND JUDGMENT*
 BRORBY, Circuit Judge.
 
 
 1
 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Julia and Arthur Althoff (Appellants) appeal the entry of a summary judgment which granted Appellee a decree of foreclosure due to default by Appellants in the payment of the underlying indebtedness.
 
 
 3
 We begin by examining whether or not to hear this appeal. Appellants are proceeding pro se. There is only one Appellant's brief in the record. It is signed by appellant Arthur Althoff and is not signed by appellant Julia Althoff.
 
 
 4
 An individual may appeal in federal courts only pro se or through legal counsel. 28 U.S.C. Sec. 1654 ("parties may plead and conduct their own cases personally or by counsel"). If an individual decides to appear pro se that litigant may act in court only for himself or herself. Unless they are a member of a bar, an individual is not entitled to represent any other party. Herrera-Venegas v. Sanchez-Rivera, 681 F.2d 41, 42 (1st Cir.1982) (non-lawyer not entitled to represent prisoner in appeal of criminal conviction); see 10th Cir.R. 46 (counsel for party must file appearance and, if necessary, immediately move for admission to Tenth Circuit Bar). An appellant has a responsibility to submit a brief in support of his or her appeal. Lewis v. Lenc-Smith Mfg. Co., 784 F.2d 829, 830-31 (7th Cir.1986) (pro se litigant must take full responsibility for her appeal); see 10th Cir.R. 31 (appellant shall serve and file opening brief). If the appellant is proceeding pro se, any pleadings, including briefs, must be signed by that individual. See 10th Cir.R. 46.5 ("A party who is not represented by an attorney shall sign any motion, brief, or other paper").
 
 
 5
 Because Julia Althoff has not filed a signed brief, she has failed to file a brief before this court and has failed to support her appeal by argument or otherwise. Therefore, we decline to decide her appeal and order it dismissed without further consideration.
 
 
 6
 The facts are well known to the parties and therefore need not be repeated here. Suffice it to say Appellants executed a promissory note together with security agreements and mortgages upon real property. Appellants failed to make the payments as required by the note. Appellee commenced a foreclosure action and ultimately moved for summary judgment based upon supporting affidavits. Appellants, acting pro se, responded to the motion for summary judgment with numerous allegations and documents, none of which were supported by affidavit or as otherwise required by Fed.R.Civ.P. 56(e).
 
 
 7
 "We review the grant on denial of summary judgment de novo. We apply the same legal standard used by the district court under Fed.R.Civ.P. 56(c)." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990) (citations omitted).
 
 
 8
 A review of the record on appeal reveals numerous assertions were made by Appellants in resisting Appellee's motion for summary judgment. A fair reading of the response reveals Appellants believed they were not required to repay the loan as Appellee breached its contract in two respects: first, by failing to disburse the loan proceeds as agreed, and second, by failing to subordinate its mortgage. Furthermore, Appellants asserted Appellee failed to follow its "statutory duty" to help small business. Notwithstanding Appellants' failure to come forward with admissible evidence to support their contentions, the trial court exhaustively addressed each of these contentions in its Memorandum Opinion and Order entered on March 1, 1993. The trial court, after determining there existed no genuine issue of material fact, entered judgment for Appellee. The gist of the trial court's reasoning was: (1) the alleged breach of contract by Appellee's asserted failure to disburse the loan proceeds within six months was not a material breach of the contract which would excuse nonpayment; (2) the alleged "verbal agreement" by Appellee to subordinate its mortgage was not enforceable; and (3) Appellee violated no statutory duty.
 
 
 9
 Appellant appeals this decision making numerous assertions of error including: (1) denial of Due Process because Appellee's breach of contract has deprived Appellant of "life, liberty and property" and Appellant has "been denied any opportunity to be heard in a court of law"; (2) Appellant was not provided a "reasonable opportunity to have [his] case heard at the Summary Judgment ... for reasons as outlined in the Appellants' Affidavit by Arthur R. Althoff attached to this brief" (namely, Appellants were unaware of the need for affidavits and the trial court did not give clear notice of this requirement); and (3) genuine issues of material fact exist.
 
 
 10
 Appellants elected to exercise their right to represent themselves. Courts owe no duty to help pro se litigants make their case. Instead, a court must remain impartial and treat both sides of a controversy the same. Were a judge to help one side of a controversy, he would no longer be a judge but would become an adversary to the other side. Likewise, it is improper for a judge to provide legal advice to one party in a civil controversy. Accordingly, the trial court's failure to advise Appellants as to how to successfully resist a motion for summary judgment is not error.
 
 
 11
 Viewing the record on appeal objectively it is clear that Appellants failed to present any evidence which the trial court could properly consider when it heard the motion on summary judgment. For this reason alone the trial court's decision must be affirmed.
 
 
 12
 A party cannot defeat a motion for summary judgment by raising mere allegations of facts or mere denials of the other party's position. Fed.R.Civ.P. 56(e). A party resisting a motion for summary judgment has the obligation to produce facts in a form which would render the facts admissible during a trial. Were Appellants allowed to avoid this requirement, Appellee would have been prejudiced thereby. In a court of the United States, the rules must apply equally to both sides of a controversy.
 
 
 13
 In the case before us the trial court actually went further than required when it considered Appellants' contentions which were not supported by facts as required by law. No doubt the trial court did this in a commendable effort to satisfy himself that justice would ultimately be done. We have done the same and are persuaded the trial court's decision was correct.
 
 
 14
 Appellant has failed to persuade this court that any error was committed by the trial court. The judgment of the trial court is AFFIRMED for substantially the same reasons set forth in its Memorandum Opinion and Order of March 1, 1993, a copy being attached hereto. The mandate shall issue forthwith.
 
 Appendix
 
 15
 IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO
 
 
 16
 UNITED STATES OF AMERICA, Plaintiff,
 
 
 17
 vs.
 
 
 18
 JULIA A. ALTHOFF and ARTHUR R. ALTHOFF, Defendants.
 
 
 19
 Mar. 1, 1993.
 
 No. CIV 92-0157 JP/WWD
 MEMORANDUM OPINION AND ORDER
 
 20
 The subject of this order is plaintiff's motion for partial summary judgment filed February 1, 1993 which requests the entry of summary judgment foreclosing the mortgage lien on real property described in the complaint. Having thoroughly considered the pleadings, facts and law I conclude that plaintiff's motion should be granted.
 
 I. Background
 
 21
 Defendants executed and delivered a promissory note on January 20, 1989 in the sum of $270,000.000 payable to the Small Business Administration (SBA).[1] Defendants obtained the loan for the stated purpose of acquiring real estate and commencing a ceramic pottery manufacturing business. Pursuant to the terms of the note defendants were required to make monthly payments of $2,920.00 beginning three months from the date of the note at an interest rate of 10% per annum.[2] To secure payment of the note defendant Julia Althoff executed a mortgage in favor of plaintiff covering real property located in Catron County, New Mexico.[3] The mortgage was properly recorded on June 16, 1989.
 
 
 22
 In conjunction with the approval of defendants' loan application which was submitted on August 29, 1988, the SBA issued an Authorization and Loan Agreement executed by the SBA on September 28, 1988 and executed by the Althoff's on October 18, 1988. The Authorization set forth the terms upon which the SBA would make the loan to defendants. The Authorization required as collateral a first trust deed lien on commercial real estate located in Moab, Utah, a first mortgage lien on unimproved land located in Catron County, New Mexico (as described in footnote 3), a security interest in and assignment of proceeds from a real estate contract for property being sold by defendants to a third party in Maricopa County, Arizona[4] and a first security interest in all personal property including machinery, equipment, furniture, inventory, fixtures, accounts receivable, and general intangibles.
 
 
 23
 Defendants admit the authenticity of both the January 20, 1989 note and the June 16, 1989 mortgage.
 
 
 24
 The $270,000.000 of loan proceeds were disbursed to defendants in twelve installments, the last of which was 100% disbursed on February 16, 1990.
 
 
 25
 The first repayment installment of the note was due from defendants on April 20, 1989. Defendants made full payment of the first installment on April 22, 1989.[5] Defendants made three subsequent payments: August 21, 1989, $3,000.00; April 23, 1990, $2,290.00; June 21, 1990; $1,000.00. On July 6, 1989 the SBA approved deferment to maturity of the principal portions of the installments due in May, June and July 1989 and deferment of the interest portions until August 1989. Affidavit of John S. Gygi submitted in support of plaintiff's Reply to Response to Motion for Summary Judgment. Defendants failed to make further payments despite demand by plaintiff and plaintiff gave notice of acceleration as provided for in the note.
 
 
 26
 Following notice to defendants the lien on real property in Moab, Utah was foreclosed at a non-judicial sale on November 19, 1991. Affidavit of John S. Gygi submitted in support of plaintiff's motion for summary judgment. Plaintiff purchased the property at the foreclosure sale for $45,000.00 and intends to liquidate the property and apply any proceeds to defendants' account. Id.[6]
 
 II. Legal Standard for Summary Judgment
 
 27
 Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to " 'secure the just, speedy and inexpensive determination of every action.' " Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1). A motion for summary judgment may be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, Harsha v. United States, 590 F.2d 884, 887 (10th Cir.1979), the burden on the moving party may be discharged by demonstrating the absence of evidence to support the nonmoving party's case. Celotex, supra at 324. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id. at 322. Summary judgment is warranted even when state of mind is at issue, when the party opposing the motion fails to make the requisite showing to defeat the motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).
 
 III. Discussion
 
 28
 Defendants do not dispute the authenticity of the note or the mortgage securing the note which plaintiff now seeks to foreclose in its motion for summary judgment. Nor do defendants dispute the fact that they have not made payments pursuant to the terms of the note. Rather, defendants argue that summary judgment is inappropriate because there are genuine issues of fact relating to why defendants failed to make payments and whether any monies are due and owing under the note. While defendants do indeed raise many factual issues in their response to plaintiff's motions, none of the issues raised by defendants are sufficient to defeat plaintiff's motion for summary judgment. Defendants "facts" simply do not raise genuine issues of material fact sufficient to preclude the relief requested by plaintiff. Moreover, while defendants presented numerous exhibits in conjunction with their opposition to plaintiff's motion, the issues of fact defendants raise are for the most part conclusory allegations and their opposition to plaintiff's motion is not supported by a single affidavit. See Fed.R.Civ.P. 56(e).
 
 
 29
 Defendants raise three basic arguments in opposition to plaintiff's motion; that plaintiff's failure to disburse the entire loan proceeds within the six months set forth in the Authorization amounted to a default by the SBA which relieved defendants of their obligations to make payment; that plaintiff's failure to subordinate its second deed of trust lien on the Arizona property caused defendants' to lose the property and sustain a $400,000.000 loss; and that in its dealings with defendants the SBA failed to follow its statutory "duty" to help small businesses.
 
 
 30
 A. The failure of the SBA to disburse the loan within six months cannot preclude summary judgment for plaintiff.
 
 The Authorization states that
 
 31
 This Authorization is subject to: ....
 
 
 32
 (b) No disbursement being made later than 6 months, from the date of this Authorization, unless such time is extended in writing.
 
 
 33
 Plaintiff disbursed the loan in twelve installments, the last one on February 16, 1990. Defendants contend that the failure to disburse the funds within the six month period set out in the Authorization, which had been executed by defendants on October 18, 1988, amounts to a breach of plaintiff's contract with defendants. Plaintiff does not deny that it took longer than six months to disburse the loan funds. However, plaintiff argues that it was due to delays caused by defendants in complying with agreed upon SBA loan requirements that disbursement surpassed the six month provision. Plaintiff also asserts that the Authorization is not a contract by the SBA, as both federal regulations and the Authorization itself clearly state that the Authorization "is not a contract to loan money." 13 C.F.R. Sec. 122.5-5; Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment at 6-7.
 
 
 34
 I conclude that the failure of the SBA to disburse 100% of the loan proceeds within exactly six months does not create a genuine issue of material fact which can preclude summary judgment. The first eight installments were disbursed within six months of the Authorization and amounted to 85.3% of the total loan funds. 92.3% of the loan was disbursed within seven months of the Authorization and the full $270,000.00 within seventeen months of the Authorization. Given these facts, defendants' continued failure to make payments on the loan cannot be excused by the failure of the SBA to disburse 100% of the loan within the six months outlined in the Authorization. While defendants' claim of bad faith delay and claim that the "SBA has never, helped, acknowledged, or shown any evidence that would indicate an asserted effort that was made to expedite the disbursement of the loan" injects additional facts into the litigation, these facts are not material to plaintiff's request for summary judgment. Defendants acknowledge that they received 92.3% of the loan within seven months of the Authorization and that they eventually received the full amount of the loan. Defendants claim of too little too late is simply unavailing at this juncture.
 
 
 35
 Because I conclude that the failure of the SBA to disburse the loan within exactly six months does not create a genuine issue of material fact which can preclude summary judgment in this case, I find that it is irrelevant whether the delay was caused by defendants, plaintiff or a combination of both parties. Moreover, even if the Authorization could be construed as a contract, the alleged "breach" does not amount to a material breach which can excuse defendants' repayment of their loan. In addition, I agree with plaintiff that the six month proviso appears to be written for the benefit of the SBA and not defendants. Affidavit of Karl Wernick (current SBA liquidation officer and former loan processor) submitted in support of plaintiff's Reply to Response to Motion for Summary Judgment (disbursement provision inserted to allow the SBA to rescind its authorization if the borrower has failed to go forward with the loan ... not intended as deadline for the SBA to disburse loan proceeds).
 
 
 36
 B. The SBA's alleged failure to subordinate its lien on the Arizona property does not create a genuine issue of material fact which can preclude summary judgment.
 
 
 37
 Defendants make numerous conclusory allegations that the SBA actually owes them money as a result of bad faith actions which caused them to lose their Arizona property on which the SBA held a second deed of trust lien. Defendants contend that the SBA consented to subordinate its lien to that of another lienholder, but later withdrew consent. As a result, defendants contend that the "SBA caused a foreclosure sale on this property and for Defendants to lose $400,000.00, the market value of the property." Memorandum in Support of Defense Against the Plaintiff's Motion for Summary Judgment at 2. Defendants present two exhibits (Exhibit C and Exhibit AC) in support of their position. Neither exhibit supports their argument nor creates a genuine issue of material fact sufficient to preclude summary judgment. Rather, no documents executed between defendants and plaintiff, and made a part of the record, state either implicitly or explicitly that the SBA would subordinate its lien on the Arizona property to a senior lienholder once the senior mortgage lien on this property matured and had to be paid or refinanced or that the SBA had any legal duty to undertake such an obligation.
 
 
 38
 Defendants' Exhibit AC is a letter from Robert Curtis, Loan Specialist, of the SBA to defendant Arthur Althoff approving defendants' request to "change the Arizona real estate collateral for the above loan, from an assignment of the sales contract to a second trust deed on the property." This letter makes no mention of subordination upon refinancing of the senior lien and appears to represent the entire agreement between the parties regarding the amendment to the Authorization relative to the Arizona property.
 
 
 39
 Defendants' Exhibit C is a photocopy of a letter from Gregory M. Sir, Chief Executive Officer of Mortgages Ltd. to defendant Julia Althoff. The letter references an alleged "verbal agreement" made by the SBA to Mortgages Ltd.
 
 
 40
 Per my conversation with the SBA, they did agree to Subordinate their lien position and stay second to our first position loan. This verbal agreement was subject to Mortgages Ltd. keeping their loan balance the same or less. But when our note/loan came up for renewal, the SBA refused to subordinate to our lien as originally agreed.
 
 
 41
 Therefore, our note holder was forced to call the note all due and payable causing the property to be sold at foreclosure sale.
 
 
 42
 This exhibit cannot support defendants' allegations that the SBA somehow breached its agreement with defendants thereby excusing payment on the note and creating a genuine issue of material fact which would preclude summary judgment. First, the exhibit is not in a form I can properly consider as a document supporting an opposition to summary judgment. See Fed.R.Civ.P. 56(e). Second, even if I were to consider this exhibit, at most it illustrates an oral, gratuitous promise from the SBA to Mortgages Ltd. As such it would be wholly unenforceable. Moreover, even if I considered it to be an enforceable contract, defendants would at most be third party beneficiaries of any agreement made between the SBA and Mortgages Ltd. Finally, the letter makes no indication as to whether the condition precedent to the SBA's "verbal agreement" was even met--i.e. that Mortgages Ltd. kept its "loan balance the same or less" and defendants presented no evidence on this point.
 
 
 43
 Again, while defendants have certainly injected additional facts into the litigation by alleging that the SBA somehow backed out on a promise to a third party to subordinate its lien on the Arizona property, defendants have failed to create a genuine issue of material fact which would preclude summary judgment.
 
 
 44
 C. The SBA did not violate any statutory or regulatory mandate which can preclude summary judgment.
 
 
 45
 Defendants also argue that summary judgment is improper because, in their dealings with defendants, the SBA failed to abide by federal statutes and regulations which require the SBA to "aid, counsel, assist and protect small businesses." Memorandum in Support of Defense Against the Plaintiff's Motion for Summary Judgment at 3, 5. Defendants cite to 15 U.S.C. Sec. 631 which states that:
 
 
 46
 It is the declared policy of Congress that the Government should aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns in order to preserve free competitive enterprise....
 
 
 47
 Defendants argument cannot serve as an obstacle to summary judgment. First, a "declaration" of Congressional policy is not a non-discretionary mandate to an agency. Moreover, Congress did not declare that the policy of the government should be to aid and assist small business at all costs and in all circumstances. Rather, as is only sensible, Congress declared that Government should aid, counsel and assist "insofar as possible." This the SBA did.
 
 
 48
 The SBA loaned a lot of money to defendants in an effort to "assist" them in starting their business. In February of 1989 the SBA agreed at defendants' request, in an effort to "assist" defendants, to amend the Authorization and accept a second trust deed on the Arizona property in place of an assignment of the sales contract on the property. In July of 1989 the SBA approved deferment of both principal and interest on three installments in an effort to "assist" defendants in getting started in their business. While defendants claim that the SBA failed to heed their pleas for help, I find that the SBA more than complied with Congressional policy to aid and assist small business "insofar as possible."
 
 
 49
 Defendants also contend that summary judgment is inappropriate because the "SBA demanded monthly payments, including interest, on the full $270,000.00 as required by the note" before defendants had actually received the full amount of the loan. Memorandum in Support of Defense Against the Plaintiff's Motion for Summary Judgment at 1-2, 6. Defendants contention is completely unsupported by the record. Plaintiff has shown unequivocally that interest has accrued only on those amounts actually disbursed and the four payments which defendants actually made were applied against principal and interest due at the time of payment. Affidavit of John Gygi submitted in support of Reply to Response to Motion for Summary Judgment. The SBA's "demand" of payment was made properly pursuant to the loan agreement signed by defendants.
 
 
 50
 D. Defendants have failed to set forth a cognizable counterclaim against plaintiff.
 
 
 51
 While defendants' answer to plaintiff's complaint states that "the Defendants pray that the complaint be dismissed, that the claims of Defendants' counterclaim be heard and that Defendants be awarded judgment against the Plaintiff as set forth in their counterclaim" defendants' answer sets forth no clearly discernible counterclaims against plaintiff. Defendants also reference a cause of action against plaintiff in their response to plaintiff's motion for summary judgment stating that the "Defendants have a claim for monetary damages stemming from the SBA's breach of contract." Memorandum in Support of Defense Against the Plaintiff's Motion for Summary Judgment at 8-9. Defendants' response also alludes to a cause of action for misrepresentation. While I find that defendants have failed to sufficiently set forth the nature of their counterclaims and to properly invoke the jurisdiction of this court, even if defendants' answer and/or response could be read to set forth a counterclaim for breach of contract or misrepresentation, I find that plaintiff is entitled to sovereign immunity for any claim of misrepresentation and that defendants' claim of breach of contract is meritless.
 
 
 52
 The United States is immune from suit except as it consents to be sued and it is the terms of this consent which define my jurisdiction to entertain the suit. Ascot Dinner Theatre, Ltd. v. Small Business Administration, 887 F.2d 1024, 1027 (10th Cir.1989). As an agency of the United States the SBA is afforded all immunities applicable to the United States. Small Business Administration v. McClellan, 364 U.S. 446, 448-50 (1960).
 
 
 53
 Because the SBA is immune from suit unless immunity has be explicitly waived, any tort claim defendants seek to bring against plaintiff must be brought pursuant to the Federal Tort Claims Act (FTCA) which waives immunity for certain specified torts. 28 U.S.C. Sec. 2671 et seq. Defendants have failed to invoke the jurisdiction of this court under the FTCA. However, even if jurisdiction had been properly invoked the FTCA does not waive the immunity of the United States, and thus of the SBA, for torts based on misrepresentation or deceit. Since the only plausible tort defendants might possibly allege against plaintiff appears to rest on allegations of misrepresentation and deceit, suit against the SBA is barred.
 
 
 54
 If defendants could be considered to have properly alleged a claim of breach of contract 15 U.S.C. Sec. 634(b)(1) would permit suit against the Administrator of the SBA. However, as discussed above, defendants' allegations a breach of contract fall far short of stating a sufficient claim. Defendants claim that the SBA breached "contract terms" by failing to disburse all funds within six months must fail. As discussed above, I conclude that even if the six month proviso could be read to create some right in defendants, the SBA's admitted failure was not a material breach which can support defendants' nonperformance.
 
 IT IS THEREFORE ORDERED THAT:
 
 55
 1. Plaintiff's motion for partial summary judgment is GRANTED.
 
 
 56
 2. The hearing on April 1, 1993 at 1:30 p.m. will be limited to determination of the principal balance due on the note and computation of the accrued interest.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Plaintiff United States of America has brought this action at the request of the SBA pursuant to 28 U.S.C. 1345, 28 U.S.C. 3001 et seq., and 15 U.S.C. 631 et seq
 
 
 [2]
 In its motion for summary judgment plaintiff listed the interest rate as 10.25%. However, in its reply to defendants' response which disputed the accuracy of this figure, plaintiff agreed that the interest rate is 10% and not 10.25%
 
 
 [3]
 The mortgage establishes a first lien on real property described as:
 Lot Two (2), ESCUDILLA BONITA ACRES, UNIT I, according to the plat recorded in Cabinet A of Maps, Slide No. 141-142, records of Catron County.
 Lot Fifteen (15), ESCUDILLA BONITA ACRES, UNIT I, according to the plat recorded in Cabinet A of Maps, Slide No. 141-142, records of Catron County.
 Lot Twenty-six (26), ESCUDILLA BONITA ACRES, UNIT I, according to the plat recorded in Cabinet A of Maps, Slide No. 141-142, records of Catron County.
 EXCEPT: 50 foot easement on each side of Coyote Creek which is reserved for use by owners and purchasers of ESCUDILLA BONITA ACRES, UNIT I, to drill wells of at least 100 feet depth for domestic uses and to provide water line easements to the existing utility easements.
 
 
 [4]
 When the purchasers under the real estate contract defaulted, the Authorization was amended in February 1989, at the request of defendants, to require defendants to give a second deed of trust lien on the Arizona property
 
 
 [5]
 In its motion for summary judgment plaintiff had neglected to credit this payment to defendants' account. In its reply to defendants' response which accurately pointed out the discrepancy, plaintiff presented documentation which shows that defendants' account now has been properly credited with this payment. Affidavit of John Gygi submitted in support of plaintiff's Reply to Response to Motion for Summary Judgment
 
 
 [6]
 In their response, defendants attempt to argue that "SBA took possession of the Utah property improperly, and that the defendants never had an opportunity to defend themselves in a Court of law", and that this allegedly wrongful action should preclude foreclosure of the mortgage lien on the Catron County property. I reject this argument as unfounded. Defendants received notice of the foreclosure sale at which the SBA obtained title to the Utah property. Although the SBA subsequently served defendants with notice to vacate the Moab property defendants refused and the SBA was forced to obtain an order from the United States District Court of Utah requiring defendants to vacate the property